587 So.2d 835 (1991)
Johnie HEIDEL
v.
STATE of Mississippi.
No. 07-KA-59495.
Supreme Court of Mississippi.
September 11, 1991.
*836 J. Dudley Williams, Aberdeen, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, Justice, for the Court:

I.
The hour was late, past eleven in the last hour of the last day of the year. "Bobby, I'm going to die tonight," Esther Heidel told her niece's husband. Bobby Roebuck was driving his wife's aunt home after a spat with her husband at a New Year's Eve party. "Esther, that's not so," Bobby replied. Esther repeated, "I'm going to die." It was a momentary reflection and soon passed, but less than three hours later, Johnie Heidel shot and killed his wife, and the question is whether he did so in self-defense or whether his conduct constituted culpable homicide.
A Monroe County jury found Johnie Heidel guilty of manslaughter. On appeal he argues the jury had no authority to reject his story of self-defense. Heidel questions as well the content of the legal rules through which the Court instructed the jury of the law it was to apply en route to its verdict. We find no error on these points, but we do find error in the Court's refusal to allow Heidel to prove his wife's propensity for violence through testimony of a specific attack she is said to have made on him some two weeks earlier.

II.

A.
Esther Greene Heidel was born on October 17, 1925. A few days after her death, her examining pathologist would record she was "five feet, five inches in height ... middle-aged to early elderly appearing, moderately obese." Johnie Heidel was sixty-five at the time of trial. Esther and Johnie had married late in life, and their time together had been less than idyllic. They slept in separate beds in separate rooms. The Heidels' signs were ominous on New Year's Eve afternoon, 1986. Esther *837 began drinking. That evening the Heidels went to the local VFW to see in the New Year with friends. Before 2:00 a.m. on New Year's Day, 1987, Esther lay on the floor of their home on Highway 8 east of Aberdeen mortally wounded by the shot of a single bullet that entered the upper back part of her head and exited in front of her right ear.
When Monroe County Sheriff Frank Patterson arrived at the Heidels' double-wide trailer about a quarter past two in the morning, Johnie Heidel greeted him and immediately told the Sheriff that he had shot his wife in self-defense because she was going to kill him with a knife. Sheriff Patterson went inside and found Esther lying on the floor. Esther's feet were near the bar and her head was facing the window. Blood flowed from her right temple. Esther was wearing a nightgown and was lying on her back. There was a butcher knife lying near her hand, but she was not holding it. She was apparently unconscious, gasping for breath. Ambulance attendants had already arrived and were administering aid preparatory to taking Esther to the hospital emergency room.
All of this was in the dining area, adjacent to the kitchen. A waist-high breakfast/snack bar separated the two rooms. Heidel showed the Sheriff where he says he had been standing at the time of the shooting and where Esther had been. Sheriff Patterson retrieved the .25 caliber automatic model RG 26, serial number U116256, pistol which still had five cartridges in it. He also found one spent shell casing on the floor. The projectile or bullet was found beneath the chair under the west end of the table, lying on the carpet, not embedded at all. The breakfast bar had blood stains underneath the 8" x 10" overhang at the end. There was blood on the carpet where Esther's head lay.
A few moments later, the ambulance attendants took Esther to the hospital, where she lingered for a while and died on the third of January, 1987.
There is more to the story. In the course of the New Year's Eve festivities at the VFW, the Heidels had found themselves at a table next to one where Catherine Stoddard was seated. The three visited for a time, and Esther Heidel had invited Catherine to come see the Heidels' new trailer home. Esther was proud of how she had fixed the place up. After a while, Johnie asked Catherine to dance. Catherine turned to Esther and asked, "Is it all right?" Esther answered, "Sure, it's fine."
A few minutes later, according to Heidel, "We was doing a fast song ..., kindly [sic] on the edge of the crowd of people." Esther appeared suddenly and by all accounts hit Heidel hard with her purse. "She hauled off and hit me right in the face with it, glasses and all. It knocked me down." Esther later explained, "he was out there dancing with that little whore." Heidel said, "I seen stars" and "was staggerish there for a moment." One witness said he "had blood coming down his face." Heidel admitted he was not badly injured but "was hurt inside," that he "was ashamed, embarrassed" more than anything else.
The VFW immediately evicted Esther. Bouncer Bobby Miller "escorted her to the door." Apparently the club frowns on behavior like Esther's. In any event, Esther left alone and walked in the cold of the night some quarter of a mile to the home of her niece, Ethel Roebuck, and Ethel's husband, Bobby. Twice earlier that evening, Esther had called her niece, asking if Esther would come to the VFW and get her and take her home. Once at the Roebucks' home, Esther talked a bit, explained what had happened, and then Bobby Roebuck agreed to drive her to her home "about eleven or twelve miles" away. When they arrived shortly before midnight, Johnie Heidel was already home, and he appeared at the door and to Esther said, "You're not coming in the house fussing." Roebuck quickly decided the Heidels' troubles were none of his and left.
The .25 caliber pistol becomes important. Heidel says he had never carried it before, but on this New Year's Eve at first thought he should because he would be carrying $3200 in cash, money to pay a man for a garden tiller and to get his central heating hooked up on the day after *838 New Year's. After some discussion  in the car as he and Esther were about to leave for the VFW  Heidel, on a pretext of checking to see if he had left a cigarette burning, went back inside the home and "laid that gun down on that bar." When he got back home some four hours later, the first thing Heidel did was take the gun and put it up under his bed. "I didn't know  figured she was going to be mad or something when she come in; didn't want that pistol to be laying there."
After Bobby Roebuck had left and the Heidels were inside out of the cold, Esther was mad and fussing and began hurling a string of epithets at Heidel, demanding that he fight her, and calling him a coward when he wouldn't. In time, Esther wore down, and Heidel retired to his room and barricaded the door with a dresser and mirror. He tried to sleep. "I was just kindly leaning up against my pillow. I hadn't ever went to sleep." As he tossed and turned, he remembered he had left his car unlocked and thought he had better attend to it. He dressed and put on his blue jeans. For whatever reason, he retrieved the pistol and put it in his back pocket. "I went out real quietly."
When he stepped back inside, he stated Esther was sitting at the counter. Johnie Heidel says Esther came at him with a knife.
I said, "Esther, I've got a gun in my pocket." I said, "Put the knife down." She lunged at me, and I grabbed her hand. I grabbed her by the elbow ... She kicked me in my groin. It made me so weak I reached for the gun. My hands were slipping, pow, I shot her.

B.
On March 10, 1987, the grand jury of Monroe County returned an indictment charging Johnie Heidel with the murder of his wife. Heidel admitted the shooting, and the case went to trial on June 17, 1987, and was ultimately submitted to the jury on three theories: murder under Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1987), manslaughter under Miss. Code Ann. § 97-3-35 (1972), and self-defense or, more properly, justifiable homicide under Miss. Code Ann. § 97-3-15(1)(f) (Supp. 1987). The jury found Heidel guilty of manslaughter, and the Circuit Court sentenced him to twelve years imprisonment, with four years suspended. See Miss. Code Ann. § 97-3-25 (1972).
Heidel moved for judgment of acquittal notwithstanding the verdict and, in the alternative, for a new trial. The Circuit Court denied these motions. This appeal has followed.

III.

A.
Heidel argues that the Circuit Court erred when it denied his motion for judgment of acquittal notwithstanding the verdict. Here, Heidel challenges the legal sufficiency of the evidence to undergird his conviction. He claims the evidence was such no fair-minded jury could find him guilty beyond a reasonable doubt and invokes the version of that rule that takes its name from Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).
Our scope of review is as limited as it is familiar. This Court must consider all the evidence in the light most favorable to the verdict with respect to each element of the offense. Fisher v. State, 481 So.2d 203, 212 (Miss. 1985); Harveston v. State, 493 So.2d 365, 370 (Miss. 1986); Callahan v. State, 419 So.2d 165, 174 (Miss. 1982). The credible evidence which is consistent with guilt must be accepted as true, Spikes v. State, 302 So.2d 250, 251 (Miss. 1974), and we must give the prosecution the benefit of all favorable inferences which may be reasonably drawn from the evidence. Harveston, 493 So.2d at 370; Hammond v. State, 465 So.2d 1031, 1035 (Miss. 1985); Glass v. State, 278 So.2d 384, 386 (Miss. 1973). We may reverse only where the evidence is such that reasonable and fair-minded jurors could only find the defendant not guilty. Harveston, 493 So.2d at 370; Fisher, 481 So.2d at 212; Cook v. State, 467 So.2d 203, 208-09 (Miss. 1985).
*839 A Weathersby claim demands that we be clear how on appeal we consider material evidence for the defense that is both uncontradicted and inconsistent with the verdict. There is loose language in our cases that we ignore it. See, e.g., Montgomery v. State, 515 So.2d 845, 848 (Miss. 1987); Stever v. State, 503 So.2d 227, 230 (Miss. 1987); Belino v. State, 465 So.2d 1043, 1044 (Miss. 1985). Still, we have long held that "the jury has no right to disregard arbitrarily evidence that is uncontradicted and not unreasonable or improbable on its face." Fortenberry v. State, 216 Miss. 243, 251, 62 So.2d 325, 327 (1953); McLeod v. State, 140 Miss. 897, 901, 105 So. 757 (1925), and on principle this Court is bound by the same injunction. Weathersby is but an elaboration of this view. There the Court stated:
where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.
Weathersby, 165 Miss. at 209, 147 So. at 482. This rule is alive and well and living in the courtrooms of this state. Pritchett v. State, 560 So.2d 1017, 1019 (Miss. 1990); Blanks v. State, 547 So.2d 29, 33 (Miss. 1989); Lanier v. State, 533 So.2d 473, 490 (Miss. 1988).
The coin has another side. In Harveston we recognized that the Weathersby rule was nothing more than a restatement of our conventional standard of review of a criminal trial court's refusal to direct a verdict of acquittal, that
if the defendant and his witnesses are the only eyewitnesses to the homicide and if their version of what happened is both reasonable and consistent with innocence and if, further, there is no contradiction of that version in the physical facts, facts of common knowledge or other credible evidence, then surely it follows that no reasonable juror could find the defendant guilty beyond a reasonable doubt. Under such circumstances we have always mandated that peremptory instructions be granted whether under the label Weathersby or otherwise.
Conversely, we have held repeatedly that, if there are circumstances shown in the evidence which materially contradict the defendant's version of self-defense, the jury is not required to accept his version, but may in determining guilt or innocence consider his version of self-defense along with the conflicting evidence and any unfavorable inferences therefrom. May v. State, 460 So.2d 778, 782 (Miss. 1984); Johnson v. State, 346 So.2d 927, 929 (Miss. 1977).
Harveston, 493 So.2d at 371; Pritchett, 560 So.2d at 1019.
In Buchanan v. State, 567 So.2d 194, 197 (Miss. 1990), we held Weathersby did not require reversal where there was evidence the victim had been shot in the back, contradicting the defendant's claim to have shot in self-defense while the victim was facing her. Similarly, Weathersby did not mandate appellate intervention in Thornhill v. State, 561 So.2d 1025, 1030-1032 (Miss. 1989), where defendant's self-defense theory was eroded by the facts that (1) no glass was found under the victim but was only on top of him and to his side, somewhat undermining the story that the victim had broken the window in the door himself; (2) the hammer was not found gripped in the victim's hand and no prints were on it; (3) there was no glass on the victim's boots; and, (4) there were no cuts on the victim's hands or arms. See also, May v. State, 460 So.2d 778 (Miss. 1984).

B.
These views before us, there are at least two theories upon which reasonable jurors could have rejected Heidel's defense and found his conduct culpable beyond a reasonable doubt.
First, the jury may have found Heidel's description of events indecipherable, if not improbable, and rejected it, leaving him having admitted that he shot his wife but without excuse or justification in law. Appropriately skeptical jurors, for example, may have had a tough time visualizing how *840 Heidel was defending himself from Esther's assault  as he described that defense  and managed at once to draw his gun from his back pocket and shoot her. Reasonable people might have found odd Heidel's explanation
I could have hit the woman. I could have hit her, but she had a broken plate in her mouth. The dentist told her to wait until after Christmas; he'd fix it. Maybe I would have hit her, but I didn't want to hit my woman. Never touched my woman.
So he shot her?!? Assuming Heidel did get up, after barricading the door to his room and going to bed, and get completely dressed again to go out into the cold to be sure his car was locked, it is not clear why he would have needed to take his gun from under the bed, so that he was armed when he came back inside and found Esther sitting there. Heidel said Esther cut him with the butcher knife, told the Sheriff "she had cut him across the left forearm with a knife." Sheriff Patterson looked at Heidel's arm and saw only "a briar scratch ... kind of like when a briar might scratch you ..." with little droplets of dried blood. The State Crime Laboratory examined the knife and "determined that no blood was present on the knife." Heidel said right before he fired, "I could feel that butcher knife going in my neck," but no evidence suggests Heidel was found with any neck wound.
Dr. Richard Griswald added much doubt to Heidel's story when he told of the autopsy he performed and explained why, in his opinion, the fatal bullet entered the top back of Esther's head, exiting near the right temple, "entering in the back left area and exiting in the right temporal area ... . the missile path is ... from her left side and from a higher position to a lower position... ." Dr. Griswald explained further that the entry wound was not a contact wound, one caused by a shot fired "in contact or within no more than one to two inches ... of the skin." The autopsy performed on January 4, 1987, revealed bruises on Esther's chest and arm "several days to as long as a week" old. Particularly hard to square with Heidel's tale are the bloodstains splattered underneath the 8"  10" overhang at the end of the waist-high breakfast bar. Heidel had told Sheriff Patterson Esther had been standing when he shot her. Jurors who, in the face of these facts, may have found Heidel to have told less than the whole truth may hardly be said to have shirked their duty.
Second, assuming everything Heidel said was true, assuming every event Heidel described happened exactly as he said (though there is much he did not describe very exactly), reasonable jurors may still have found that Heidel used excessive force. Viewing the facts objectively and from the point of view of one in Heidel's position, Flowers v. State, 473 So.2d 164, 165 (Miss. 1985), it is not at all clear that Heidel's shooting his wife was a reasonable and necessary course of action. Reasonable jurors on this proof may well have found beyond a reasonable doubt that the prosecution had negated Heidel's justifiable homicide defense.

IV.
Heidel argues that the Circuit Court erred when it submitted to the jury Instructions Nos. S-1A and S-2A.[1] If we appreciate *841 his point, Heidel is complaining that the two instructions conflict one with the other and that the conflict necessarily would substantially confuse a rational jury. This, Heidel says, requires reversal, and he relies on Stoop v. State, 531 So.2d 1215, 1218-19 (Miss. 1988), and Smith v. State, 463 So.2d 1028, 1029-30 (Miss. 1984). In each of these cases we found error in the giving of these same instructions in combination and reversed on grounds
They are contradictory in that S-1A omits any reference to self-defense whereas S-2A sets forth self-defense.
Stoop v. State, 531 So.2d at 1219; Smith v. State, 463 So.2d at 1029-30.[2]
It is important that, in both Stoop and Smith, the defendant had been convicted of murder. In today's case, the jury acquitted Heidel of murder and found him guilty of the lesser offense of manslaughter. For better or for worse, we have long held that one indicted for murder "but convicted of manslaughter may not on appeal complain of an instruction dealing with murder, even if erroneous." Carter v. State, 402 So.2d 817, 819 (Miss. 1981); see also, Davis v. State, 472 So.2d 428, 435 (Miss. 1985); Moss v. State, 386 So.2d 1129, 1132 (Miss. 1980); Ray v. State, 381 So.2d 1032, 1034 (Miss. 1980); King v. State, 315 So.2d 925, 926 (Miss. 1975); Boyd v. State, 253 Miss. 98, 105, 175 So.2d 132, 135 (1965). In Carter the Court explained that a conviction of manslaughter and not murder was "tantamount to a verdict by the jury of not guilty of the crime of murder." Carter, 402 So.2d at 819. The Carter jury had been instructed on the defendant's theories of self-defense, accident, and the burden of proof the state bore. The Court reasoned that, because the jury did not find the defendant guilty of murder, the defendant had experienced no legally cognizable prejudice. The defendant had suffered no adverse verdict on the point where the instructions conflicted.
Seen in this setting, Heidel's complaint reduces itself to one that Instruction S-1A is erroneous in that it omits any reference to self-defense. Instruction S-2A is surely adequate for his purposes. Since Heidel was acquitted of murder, the jury necessarily did not employ Instruction S-1A to his detriment. For these reasons, we hold that Stoop and Smith do not require reversal today.

V.
Heidel mounts a second assault on Instruction S-2A and conjoins with it a charge of error in the Court's granting Instruction S-5.[3] His complaint is that together *842 these two instructions are contradictory and do not adequately submit to the jury his defense of self-defense or justifiable homicide.[4] Heidel again cites Stoop and inferably Smith and argues that the two instructions are contradictory because S-2A mentions self-defense while S-5 does not. The point is specious, and proceeds on the flawed premise that every substantive instruction must be viewed in isolation and must mention every essential substantive issue in a case.
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context.[5]Mackbee v. State, 575 So.2d 16, 34 (Miss. 1990); Jackson v. Griffin, 390 So.2d 287, 290 (Miss. 1980); Alexander v. State, 250 So.2d 629, 632 (Miss. 1971); see also Murphy v. State, 566 So.2d 1201, 1207 (Miss. 1990). A defendant is entitled to have jury instructions given which present his theory of the case, Murphy, 566 So.2d at 1206; Young v. State, 451 So.2d 208, 210 (Miss. 1984); however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. Murphy, 566 So.2d at 1206; United States v. Robinson, 700 F.2d 205, 211 (5th Cir.1983), appeal after remand, 713 F.2d 110 (1984); Davis v. State, 431 So.2d 468, 475 (Miss. 1983) ("A trial court is not required to give instructions which are covered by other instructions although the language may differ.")

VI.
Heidel next argues that the Circuit Court erred when it refused his proposed jury Instructions No. D-1 and D-10.[6] His grounds are that the other self-defense instructions did not explain to the jury that the prosecution had the burden of proof on *843 the self-defense issue. In other words, Heidel says the jury was not adequately told that he did not have the burden of proving that he acted in self-defense, but rather, the prosecution had the burden of negating self-defense.
We note that the Court did, in fact, charge the jury no less than five times regarding the prosecution's burden of proof. Instruction S-5 instructed the jury that it could not find Heidel guilty of manslaughter unless the prosecution proved all elements of that offense beyond a reasonable doubt. The Court also gave a more general presumption of innocence and burden of proof instruction that we find unexceptionable.[7]
In a criminal case, the burden of proof remains always with the prosecution on each element of the offense. Sloan v. State, 368 So.2d 228, 229 (Miss. 1979). The defendant is not required to prove he acted in self-defense, and, "if a reasonable doubt of his guilt arises from the evidence, ... he must be acquitted." Sloan, 368 So.2d at 229; Scott v. State, 203 Miss. 349, 34 So.2d 718 (1948). Instructions that shift the burden to the accused are error and of constitutional proportions. See, e.g., Yates v. Evatt, 500 U.S. ___, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
In Pierce v. State, 289 So.2d 901 (Miss. 1974), we found error in the circuit court's failure to instruct that the prosecution bore the burden of proving the defendant did not act in self-defense. Sloan, 368 So.2d at 229. Notwithstanding, Sloan held the error harmless, viz. that, when the jury instructions were taken as a whole and read together, the jury had been instructed on the prosecution's burden of proof, even though the self-defense instruction did not specifically tell the jury the prosecution bore the burden to prove the defendant had not acted in self-defense. Sloan, 368 So.2d at 230. Holden v. State, 399 So.2d 1343, 1345-46 (Miss. 1981), is to like effect. A jury instruction similar to that challenged today was offered and refused. The Holden Court noted that, although the instruction was proper, the instructions which were given, when considered together as a whole, had fairly and adequately instructed the jury and that reversal was not required.
On the authority of Sloan and Holden and our general rule that we review charges of error in the setting of a reading of all of the instructions together, we hold Heidel's present complaint without merit.

VII.

A.
Heidel next argues that the Circuit Court erred when it excluded evidence of Esther's prior threats she had made toward him with a butcher knife. The point arises in the context of Heidel's direct testimony given in his own defense. Heidel had just explained that on the fateful New Year's morning he had barricaded the door to his room for fear Esther would come after him with a butcher knife. The following colloquy ensued:
A. Had you ever had to do that before?
A. Yes, oh, yes. I have. Saturday before Christmas her husband and her sister came up from  I forget what town they live in, down south.
Q. Her son?
A. Jeanie and Noel. We call him Woody. Esther wanted to go to Columbus' nightclub somewhere down there. Woody didn't want to go... . So we *844 decided we'd go to the VFW club. Woody and Jeanie went on to Ethel Roebuck's. We was going to go on out there and meet them later on, you know, when we got ready. Well Esther along that evening we started getting ready. Esther put on a pretty little sweater, had glitter all over it. My woman was a nice dresser, and I was proud of it. I said, "Baby, why don't you just wait and wear that at Christmas. That's so pretty." I said, "That looks real pretty." I mentioned something like a Christmas tree. I didn't mean to call it a Christmas tree. I said, "Why don't you wait and wear that Christmas?" Well, I was in my bedroom a-getting ready; she was in her bedroom getting ready. Well finally I looked in there, and Esther was just pulling clothes off and throwing them. She went and got the butcher knife.

MR. GEDDIE: Your Honor, objection here. This is a prior incident. This is a specific act. It's not admissible. We're going back sometime  I don't know when we are  maybe in December  but this doesn't have anything to do with this case.
THE COURT: Counsel, I will sustain the objection. I'll give you an opportunity to relate it to some time.
Q. Let me just ask this question to you, Johnie. Has your wife ever attached [sic] you before?
MR. GEDDIE: Objection, Your Honor. This is a specific act; doesn't come in.
MR. WILLIAMS: I'm not describing the specific 
THE COURT: Just a minute, Counsel.
MR. GEDDIE: He's the one alleged to have malice aforethought, Your Honor.
THE COURT: All right. The objection will be sustained.
Heidel argues that it was vital to his defense to be able to show that, on prior occasions, his wife had attacked him with the butcher knife and that he would have to barricade his door to avoid the attacks. He claims our law of evidence allows such, but that the Circuit Court would not and so erred reversibly.

B.
The argument teeters on procedural grounds. Before a party may secure appellate reversal on an evidentiary exclusion, that party must have placed in the record the substance of the evidence he would have offered had the court ruled otherwise. Rule 103(a)(2), Miss.R.Ev. The Official Comment to the Rule reads:
... [W]hen a party objects to the exclusion of evidence, he must make an offer of proof to the court, noting on the record for the benefit of the appellate court what evidence the trial judge excluded. See Brown v. State, 338 So.2d 1008 (Miss. 1976); King v. State, 374 So.2d 808 (Miss. 1979). .. .
The court may also permit an aggrieved party to preserve the record by dictating into the record a statement of the evidence offered but excluded. This accords with the rule announced in such cases as Murray v. Payne, 437 So.2d 47, 55 (Miss. 1983).
The record before us simply shows Heidel's testimony, "She went and got the butcher knife." Heidel never placed in the record through question and answer or proffered statement what Esther did with the butcher knife. His counsel had opened the colloquy by asking whether, before the evening in question, he had ever had to barricade the door to his room out of fear of Esther and her butcher knife. Heidel's counsel's subsequent direct questions, "Has your wife ever attached [sic] you before?" suggests but does not supply the deficiency. Still, the Rule does not pretermit our resort to a measure of common sense, and when we do so, giving Heidel the benefit of the doubt, we hold the testimony he wanted to offer "was apparent from the context...." Rule 103(a)(2), Miss.R.Ev.; Darby v. State, 538 So.2d 1168, 1173 (Miss. 1989); Peterson v. State, 518 So.2d 632, 635 (Miss. 1987); Murphy v. State, 453 So.2d 1290, 1293-94 (Miss. 1984).

C.

1.
Substantively, this is a case where Heidel was of right entitled to offer evidence that *845 Esther had previously and recently threatened him with her butcher knife. This evidence was relevant on the issue of Heidel's state of mind in the early morning hours of New Year's Day. Rules 401 and 402, Miss.R.Ev.; Lee v. State, 160 Miss. 618, 637-41, 134 So. 185, 191-92 (1931). It was also relevant on the issue whether Esther may have been the initial aggressor. See Stoop v. State, 531 So.2d at 1219; Harveston v. State, 493 So.2d 365, 373 (Miss. 1986); Freeman v. State, 204 So.2d 842, 843-44 (Miss. 1967); and Official Comment to Rule 404(a), Miss.R.Ev.
Rule 401's general premises are given flesh and specificity in the rules that follow and several others confirm our view of admissibility. For example, what Esther did the Saturday before Christmas was an "act" and was "admissible for other purposes such as ... intent, ... [or] knowledge, ... ." Rule 404(b), Miss.R.Ev. Where intent or knowledge is an issue in the action, Rules 401 and 402 declare such an act relevant and thus admissible.[8]

2.
Insofar as Esther's prior act may reflect a propensity for wielding her butcher knife, it was admissible on other grounds. True, we have a general rule that "a person's character[9] or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]" Rule 404(a), Miss. R.Ev., but this case falls within a long recognized exception. The exception allows the accused, claiming self-defense, to offer "[e]vidence of a pertinent trait of character of the victim of the crime... ." Rule 404(a)(2), Miss.R.Ev. Heidel's justifiable homicide defense rendered Esther's propensity for violence a "pertinent trait of character of the victim," and it matters not how much of that defense had been put before the Court and jury at the time Heidel made his proffer. It is true admissibility of this character evidence hinged on Heidel's showing "evidence of an overt act perpetrated against him by the victim." See Official Comment to Rule 404(a), Miss. R.Ev. This premise implicates Rule 104(b), Miss.R.Ev., which relaxes our former predicate practice and provides:
RULE 104.[10] PRELIMINARY QUESTIONS
(b) Relevancy Conditioned on Fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition. If offeror fails to meet the condition, the objector may request the jury be instructed to disregard the evidence, however, such request shall not be a prerequisite to motion for mistrial... .
*846 This is not to say admissibility of this character evidence no longer hinges on the accused's showing of an "overt act perpetrated against him by the victim," see Official Comment to Rule 404(a), only that it no longer matters in what order the necessary steps be taken and, more particularly, that the Circuit Court thus had discretion to admit the character evidence "subject to" Heidel supplying the necessary predicate, "connecting it up," as lawyers often say.[11] This Heidel did by testifying that Esther struck at him with the butcher knife moments before he shot her.

3.
Rule 404(a)(2) applied to this record makes clear that evidence of Esther's character trait, i.e., her propensity for violence with a butcher knife, was admissible. Rule 104(b) made such evidence admissible at the time Heidel offered it. Heidel more than satisfied the latter rule's mandate that he offer "evidence sufficient to support a finding of the fulfillment of the condition."
We turn to the matter of the form such character evidence might take, a matter within the province of Rule 405, Miss. R.Ev., and particularly to whether Heidel might permissibly prove specific instances. We know from Rule 405(a) that Heidel could offer evidence of Esther's propensity for wielding a butcher knife "by testimony as to reputation." This is the rule of the pre-Rules cases, Sprinkle v. State, 137 Miss. 731, 102 So. 844 (1925), and King v. State, 65 Miss. 576, 5 So. 97 (1888), Heidel cites in his briefs. Rule 405(a) also authorizes "testimony in the form of an opinion."
The disputed testimony is neither reputation nor opinion testimony. Heidel sought to tell of a specific act, one said to have occurred some two weeks earlier on the Saturday before Christmas. Rule 405(a) allows inquiry "into relevant specific instances of conduct" but only "on cross-examination." Heidel was on direct examination. Rule 405(a) avails him nothing on the present appeal.
Rule 405 expresses an important policy pretermitting proof of specific instances of conduct or overt acts. We are familiar with the general rule that, in the case of a man on trial for assault, the prosecution may not prove that the man assaulted another two weeks earlier. The problem with such evidence is not that it is not probative but that it is too probative, in other parlance, that its prejudicial effect tends to outweigh probative value. The same view of jury psychology informs the converse context we confront today.
We have carefully crafted exceptions to this premise, one of which is Rule 405(b) which reads:
(b) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
This rule charged that the Court below  and this Court on appeal  consider whether Esther's propensity for wielding a butcher knife toward her husband "is an essential element of a ... defense." Elements become essential as a function of the parties' permissible positions and proof. Heidel made Esther's propensities essential elements of his defense by claiming self-defense. There is no escaping that Rule 405(b) empowered Heidel to make "proof ... of specific instances of ... [Esther's] conduct," particularly one of like kind and quality occurring but two weeks before. The Circuit Court erred when it sustained the prosecution's objection.[12]
We have considered whether this error may be harmless. Upon reflection, we cannot fairly say that the exclusion of proof of the specific event of the Saturday before *847 Christmas, 1986, did not negatively affect Heidel's substantial right to a fair trial. When we weigh the evidence that Heidel was the aggressor against his evidence that his wife was the aggressor and with a vengeance and with a butcher knife, we cannot say at that legally required level of confidence that the verdict would have been the same had the jury heard the full facts and circumstances of the specific instance Heidel sought to prove. The judgment of the Circuit Court of Monroe County is reversed and vacated and held for naught, and this case is remanded to the Court for a new trial or such further proceedings as may be appropriate not inconsistent with this opinion.
REVERSED AND REMANDED.
DAN M. LEE, P.J., and PRATHER, SULLIVAN and BANKS, JJ., concur.
ROY NOBLE LEE, C.J., dissents with separate written opinion, joined by HAWKINS, P.J., and PITTMAN and McRAE, JJ.
ROY NOBLE LEE, Chief Justice, dissenting:
I would affirm the conviction by the jury of Johnie Heidel for manslaughter, therefore, I dissent from the majority opinion.
Heidel was indicted for murder less than capital, found guilty of manslaughter, and sentenced to the Mississippi Department of Corrections for twelve (12) years with four (4) years suspended. The deceased victim, Esther, was the wife of Heidel. Doctor Richard Griswald, a pathologist at North Mississippi Medical Center, who performed the autopsy on the body on January 4, 1987, testified that she was 5'5" tall, moderately obese and a middle aged to elderly lady. He further testified, and the photographs showed, that one bullet wound to the head caused her death. The bullet entered at the back of her head toward the left and exited at the front of her right ear in the temple area. It was not a contact wound, e.g., there were no powder burns or evidence of the muzzle of the gun firing while being in contact with her flesh.
The investigating officer testified that the body was lying on the floor, face upwards, between a dining room table and bar to the kitchen. One hand was in a raised position and a butcher knife was on the floor approximately six inches (6") away. No blood was on the butcher knife. After the pathologist testified, the State rested its case.
The majority reverses the conviction, holding that the lower court committed reversible error in excluding evidence of the victim's attack upon Heidel with a butcher knife approximately one week previous. The gist of that incident to which Heidel attempted to testify was, "Esther was just pulling clothes off and throwing them. She went out and got the butcher knife." The court sustained the State's objection and the appellant contends that the ruling constitutes reversible error.
The general rule is that the character or reputation of the deceased is not admissible in a murder case except where there is doubt as to who was the aggressor. Stoop v. State, 531 So.2d 1215, 1219 (Miss. 1988); Shinall v. State, 199 So.2d 251, 257 (Miss. 1967); Berry v. State, 455 So.2d 774, 776 (Miss. 1984).
M.R.E. 404 states that character evidence is not admissible to prove conduct, with certain exceptions. Here the exception would be to show who was the aggressor. In order to prove this, the defendant must offer evidence of an overt act committed against him by the victim. Then the method of proving the victim's character may be by a specific occurrence in certain cases. M.R.E. 405 provides the method:
METHODS OF PROVING CHARACTER
(a) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
(b) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element *848 of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
M.R.E. 405.
In the case at bar, the excluded testimony involved specific previous acts and was excluded during direct examination, not cross-examination. Heidel attempted to introduce the testimony at a time before testifying that his actions taken were done in self defense. At this time in the trial, in my opinion, the trial judge did not commit reversible error in excluding the testimony.
Heidel and his wife had been engaged in an altercation at the V.F.W. Club and returned home by separate means. Heidel arrived home first and would not permit his wife to enter the house unless she stopped fussing. They then retired to separate bedrooms. Heidel testified that later he remembered he had not locked his automobile and he arose quietly and got his pistol and slipped out, locked the car and returned; that when he got to the kitchen bar, his wife was sitting there, and they became involved in another altercation; that he grabbed her arms, she was about to break his hold; and he shot her, fearing that she would cut him with the butcher knife she had.
Heidel told Sheriff Frank Patterson that his wife was standing when he shot her. The pathologist's testimony and the photographs show without dispute that the victim was shot in the back of the head at an angle indicating that she may have been sitting or kneeling when the shot was fired. I am of the opinion that the exception to Rule 404 would not apply.
I would affirm.
HAWKINS, P.J., and PITTMAN and McRAE, JJ., join this opinion.
NOTES
[1] Instruction No. S-1A reads as follows:

The defendant, JOHNIE HEIDEL, has been charged by an indictment with the crime of Murder for having, with malice aforethought, killed Esther Heidel. If you find from the evidence in this case beyond a reasonable doubt that the deceased, Esther Heidel, was a living person, and the defendant, JOHNIE HEIDEL, did wilfully and with malice aforethought kill Esther Heidel, without authority of law, then you shall find the defendant, JOHNIE HEIDEL, guilty of Murder.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty.
Instruction No. S-2A reads as follows:
The Court instructs the Jury that every killing of a human being without authority of law and not in necessary self-defense, is either Murder or Manslaughter; Murder when done with malice aforethought and Manslaughter when done without malice aforethought in the heat of passion and not in necessary self-defense. Thus, if you believe from the evidence in this case beyond a reasonable doubt that the defendant, JOHNIE HEIDEL, killed Esther Heidel, without authority of law and not in necessary self-defense with his malice aforethought then in that event you should find the defendant guilty of Murder as charged. In the event you believe from the evidence in this case beyond a reasonable doubt that the defendant killed Esther Heidel without authority of law and not in necessary self-defense without malice aforethought and in the heat of passion then in that event you should find the defendant guilty of Manslaughter.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty.
[2] In a technical sense, S-1A includes a reference to self-defense when it provides that the jury may find the defendant guilty of murder only if it found that he acted "without authority of law." The self-defense statute, Section 97-3-15, is "authority of law" within the meaning of Instruction S-1A. The effect of Stoop and Smith is a holding that this point is too latent to be detected by the average juror.
[3] Jury Instruction S-5 reads as follows:

If you find that the State has failed to prove one of the essential elements of the crime of murder, you must find the defendant not guilty of murder, and you should proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all the elements of the lesser crime of manslaughter.
The crime of manslaughter is distinguished from murder by the absence or failure to prove that the defendant acted with the necessary malice aforethought.
If the evidence warrants it, you may find the defendant guilty of a crime lesser than murder. However, notwithstanding this right, it is your duty to accept the law as given you by the Court, and if the facts and the law warrant a conviction of the crime of murder, then it is your duty to make such finding uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser crime.
[4] In addition to Instruction S-2A, the Court submitted three instructions that explain Heidel's defense of self-defense. These instructions read as follows:

S-3
The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the Jury to determine the reasonableness of the ground upon which the defendant acts.
D-11
The Defendant, Johnie Heidel, asserts that the killing of Esther Heidel was a justifiable homicide because Defendant's act which caused the death of Esther Heidel was committed in the lawful defense of one's own person where there is reasonable ground to apprehend a great personal injury and there is eminent danger of such design being accomplished.
The killing of a human being is justified if the Defendant was acting in self defense because he had reasonable grounds to fear that he would be stabbed and killed and that there was imminent danger of the injury occurring. If you find that a homicide is justifiable it is not necessary that you believe that Johnie Heidel had no ill will or malice toward Esther Heidel.
D-4
The Court instructs the Jury that a man has a lawful right to repel force with force, and if Johnie Heidel, under the circumstances he was faced with, reasonably believed that he was in some immediate danger of losing his life or of suffering substantial bodily harm then it is your sworn duty to find the Defendant not guilty.
[5] Heidel's jury was expressly instructed that

You, as jurors are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole.
[6] Court instructs the Jury that the Defendant having raised the claim of self-defense, the burden is on the State to prove beyond a reasonable doubt that the Defendant did not act in the necessary self-defense, and unless the State meets this burden and proves to you beyond a reasonable doubt that Johnie Heidel was not acting in necessary self-defense, then it is your sworn duty to find the Defendant not guilty.
D-10
To justify a homicide as self-defense, the danger need not be actual, but only reasonably apparent and imminent so as to raise a reasonable doubt of guilt; the Defendant is not required to prove that he acted in justifiable self-defense.
[7] law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the Defendant guilty beyond a reasonable doubt. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.
The burden of proving beyond a reasonable doubt every material element of the crime with which the Defendant is charged is upon the State of Mississippi. If the State has failed to prove any material element of the crime charged beyond a reasonable doubt you are to find the Defendant not guilty.
[8] In Jenkins v. State, 507 So.2d 89, 92-93 (Miss. 1987) we misspoke when and to the extent we implied Rule 404(b) provided a test of admissibility independent of Rules 401-403. Evidence admissible under Rules 404 or 405, for example, must independently pass muster under Rules 401-403. See United States v. Beechum, 582 F.2d 898, 911 (5th Cir.1978).
[9] For better or for worse, the Rules include under the umbrella label "character" behavioral patterns or propensities. In 1986 we adopted the view of the Federal Rules of Evidence which in turn adopted the view of the Uniform Rules of Evidence. 13A U.L.A. 1 (1986). As an original proposition, a term other than "character" may have been more appropriate.
[10] Subsection (a) recognizes that a significant amount of a trial judge's responsibility is to make preliminary rulings. For instance, the judge, in cases where there is a question of the witness' competency, must first make a determination that the witness is competent before the witness is allowed to testify concerning the issue at bar. Other preliminary questions might concern privileges, the exclusionary rule, the voluntariness of confessions, and qualifications of experts. In House v. State, 445 So.2d 815 (Miss. 1984) the Court set forth extremely explicit guidelines for the trial court to use in determining whether a witness who has been hypnotized may testify in a criminal prosecution about matters explored while under hypnosis.
Oftentimes preliminary matters will involve a determination of facts. In such instances, the judge is the trier of facts. See FRE 104, Advisory Committee Notes. When the judge hears evidence on these preliminary questions, he is not bound under Rule 104 to apply the rules of evidence. The one exception to this, which is explicitly stated, is the evidentiary law relating to privileges.
[11] Neither Stoop v. State, 531 So.2d at 1219, nor the Official Comment to Rule 404(a) address directly this order-of-proof question and, hence, are not contrary authority, nor is Robinson v. State, 566 So.2d 1240, 1241 (Miss. 1990).
[12] The Circuit Court did not state the ground(s) on which it sustained the prosecution's objection. The ground may have been that Heidel had failed to lay a proper predicate. We have explained above that this ground is dubious, see Rule 104(b), Miss.R.Ev., and would require reversal as well.