IRVING, J.,
for the Court:
¶ 1. Ernest Garth shot and killed Alex Swopshire in the back yard of Garth’s home. Consequently, Garth was charged and indicted with murder. The jury returned a verdict of not guilty of murder but convicted Garth of manslaughter. He was sentenced to twenty years in the custody of MDOC with seven years suspended, pending future good behavior. Aggrieved, Garth has appealed and contends that the trial court erred (1) in denying his motion for directed verdict based on the Weathersby rule, as set out in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), and (2) in allowing certain inflammatory photographs into evidence. Finding no reversible error, we affirm.
*986 FACTS
¶ 2. The events which led to the killing are as follows: on two or three occasions on May 6, Garth and Swopshire argued and fought over a money dispute. Garth testified that the argument began over a $20 loan. Garth loaned Swopshire $20 and in exchange Garth kept Swopshire’s television as collateral. Garth testified that Swopshire paid him $10 and requested the return of the television, but Garth refused to give him the television. Garth testified that Swopshire was intoxicated that entire day.
¶ 3. During the first altercation, Garth testified that Swopshire grabbed him from behind and they began to fight. On another occasion Swopshire was inside Garth’s house and threatened Garth with a barbecue fork. Garth stated that Swopshire cursed at him and threatened to kill him the next time he saw Garth. Garth testified that after Swopshire threatened him he left for about forty-five minutes to allow Swopshire to cool down.
¶ 4. When Garth returned, Swopshire was still at Garth’s house. Garth went into his house and got his shotgun. Garth stated that he got his gun to go hunting behind his house. He stated that hunting was a normal activity for him and that he chose to go hunting that day in order to get away. Garth also testified that at the point he entered his house to get the gun, he was in fear of his life “because he had never seen him (Swopshire) like that.”
¶ 5. As Garth exited his house, he headed to the back of his property. He stated that he did not see Swopshire at that point. Garth stated that Swopshire was at the neighboring house to the right and that Garth headed in the opposite direction. As Garth continued traveling down the path, Swopshire followed him with raised hands, and Garth quickly turned and fired. Garth stated that he fired because he did not know what was in Swopshire’s hands. Garth also stated that he feared for his life. After Garth shot Swopshire, he threw out the shell, reloaded and went back into his house. Swop-shire was found unarmed.
Analysis of the Issues Presented

I. Weathersby rule

¶ 6. The standard of general review for criminal convictions and directed verdicts is to consider all of the evidence in the light most favorable to the State. Harveston v. State, 493 So.2d 365, 370 (Miss.1986). We can only reverse where, under the evidence, a reasonable juror could only find the defendant not guilty. See Jones v. State, 606 So.2d 1051, 1060 (Miss.1992).
¶ 7. Garth argues that he was entitled to a directed verdict under the Weathersby rule. See Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). Weathersby states that “where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.” Id. at 209, 147 So. at 482.
¶ 8. Garth first contends that he satisfied all of the Weathersby factors since there were no witnesses to the shooting except him. At trial, the State produced eight witnesses, including three police officers of the city of Southaven: Officers Eddie Church, Cliff Freeman and Steve Pirtle— none of whom were at the scene during the shooting. Robert Scales and Eric Morris, both nephews of Garth, also testified on behalf of the State. Both were present in the vicinity of the shooting; however, neither saw the actual shooting.
¶ 9. Secondly, Garth argues that his version of the facts is reasonable and not contradicted in material particulars by other evidence or facts. Garth argues that Swopshire came up quickly behind him with his hands raised in a threatening manner, and, while in fear for his life, he shot Swopshire. Lastly, Garth argues that his version amounts to justifiable homicide in that he was in fear for his life because the decedent had previously threatened *987 him with a barbecue fork. Consequently, asserts Garth, the trial court erred in denying his motion for a directed verdict because he was the only eyewitness who testified and his testimony was sufficient to prove self-defense. We disagree.
¶ 10. Garth’s acts must be consistent with innocence in order for the Weathersby rule to apply. See Blanks v. State, 547 So.2d 29 (Miss.1989). “Where the defendant’s, and sole eyewitness’s, version of a slaying is uncontradicted, reasonable and credible, it must be believed. And, if such version creates an absolute legal defense, he is entitled to a directed verdict of acquittal.” Blanks, 547 So.2d at 33. However, it is a rare case that satisfies the requirements of the rule in Weathersby. See Berry v. State, 455 So.2d 774, 776 (Miss.1984).
¶ 11. The Weathersby rule serves as a restatement of the conventional standard of review of a criminal trial court’s refusal to direct a verdict of acquittal, that if the defendant and his witnesses are the only witnesses to the homicide and if their version of what happened is both reasonable and consistent with innocence and if, further, there is no contradiction of that version in the physical facts, facts of common knowledge or other credible evidence, then surely it follows that no reasonable juror could find the defendant guilty beyond a reasonable doubt. Heidel v. State, 587 So.2d 835, 839 (Miss.1991). However, if there are circumstances shown in the evidence which materially contradict the defendant’s version of self-defense, the jury is not required to accept his version, but may in determining guilt or innocence consider his version of self-defense along with conflicting evidence and any unfavorable inferences therefrom. Id.
¶ 12. After careful review of the record, we find that the rule laid down in Weathersby is inapplicable to the case sub judice because Garth’s version of the events was subject to reasonable doubt. Whether Garth’s decision to shoot Swop-shire was reasonable is a jury issue. It is a well established principle that:
[A] person may not use more force than reasonably appears necessary to save his life or protect himself from great bodily harm; that where a person repels an assault with a deadly weapon, he acts at his own peril and the question of whether he was justified in using the weapon is for determination by a jury unless there is no reasonable inference in the evidence except that the use of the deadly weapon appeared necessary to protect the person from death or great bodily harm at the hands of his assailant.
Griffin v. State, 495 So.2d 1352, 1354 (Miss.1986).
¶ 13. Garth testified that he feared Swopshire would kill him and that he shot Swopshire because Swopshire came at hiip with raised hands. Garth admitted that he could not see what was in Swopshire hands and only believed that Swopshire might have had a deadly weapon in his hands. Garth also testified that he got the gun for two reasons: he feared for his life and decided to go hunting. Interestingly enough, when Garth gave his statement to the police, he never mentioned that he got his gun to go hunting. Under these circumstances, the jury could have reasonably inferred that Garth could have protected himself by using less than deadly force. The jury also could have reasonably inferred that Garth was not in fear of his life. The facts of the killing, as testified to by Garth himself, contradict his claim of self-defense.

II. Photographs

¶ 14. Garth argues that photos admitted during the trial, showing Swop-shire’s body, were gruesome and inflammatory and without probative value. The admissibility of photographs rests within the sound discretion of the trial judge, but gruesome photos which have no evidentia-ry purpose and which only arouse the emotions of the jury should not be admitted. Cabello v. State, 471 So.2d 332, 341 (Miss.1985).
*988 ¶ 15. The State argues that the photos have probative value in that they aid in describing the circumstances of the killing, location of the body, and cause of death. We agree. It was appropriate to admit the photos to corroborate and clarify the testimony of the witnesses regarding the location of where Swopshire was shot and to describe the location and nature of the wounds. See Hughes v. State, 401 So.2d 1100, 1106 (Miss.1981). Moreover, we have reviewed the photographs and do not find them to be inflammatory. The trial court did not abuse its discretion in admitting the photos into evidence.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SEVEN YEARS SUSPENDED PENDING FUTURE GOOD BEHAVIOR IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.