[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 638 
¶ 1. Donald Randolph was convicted of burglary of a dwelling by a Lowndes County jury, and was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections. Aggrieved, Randolph now appeals and asserts that the trial court erred in (1) allowing into evidence his five prior felony convictions, (2) allowing a written statement, made by him, to be taken into the jury room, and (3) giving the jury an improper instruction and denying a proper instruction.
 ¶ 2. Finding no error, we affirm.
 FACTS ¶ 3. On the evening of November 25, 2001, Johnnie Bell returned home and discovered that her back door had been kicked in and her television taken. Police investigations uncovered a latent palm print from the back door of Bell's residence. The print was analyzed by the Mississippi Crime Laboratory. The analysis revealed that the print matched the left palm print of Donald Randolph. After being arrested, Randolph gave a written statement, confessing that he and a man that he called, "Little Pop," burglarized Bell's home
 ¶ 4. Before the start of trial, the prosecution notified the trial court of the prosecution's intention of impeaching Randolph, if he chose to testify, with five prior convictions in Texas for burglary of a habitation. The court held a Peterson
hearing and ruled that the prosecution would be allowed to impeach Randolph in accordance with its plans.[1] The court instructed the prosecution that it would only be allowed to ask Randolph whether he had five prior felony convictions. The prosecution was also instructed not to mention or ask any questions about the particular details of the convictions because of their similarity to the case before the court.
 ¶ 5. Randolph testified that he did not break and enter Bell's house and steal her television. He also testified that he did not know a "Little Pop." He further testified that he signed an acknowledgment of rights form, and that he informed the police that he did not want to make a statement until he talked with a lawyer. According to Randolph, the police officers told him that he had to sign a piece of paper stating that he was not making a statement. Randolph stated that he signed a blank piece of paper, and denied ever making a written confession to the crime. Randolph also testified that he thought the officers lied about his having confessed to the crime, because he would not cooperate with their investigation of the crime.
 ¶ 6. Additional facts, as necessary, will be related during the discussion of the issues. *Page 639 
 ANALYSIS AND DISCUSSION OF THE ISSUES (1) Prior Felony Convictions
 ¶ 7. In his first issue, Randolph contends that the trial court erred in allowing the prosecution to repeatedly mention that he had five previous felony convictions as a means of impeaching his credibility. Randolph acknowledges that the trial court thoroughly considered whether the admittance of his prior convictions was proper. He also acknowledges that, under the aegis of Peterson, Mississippi law permits impeachment of a criminal defendant via his prior felony convictions. Randolph argues, however, that the prosecution should not have been allowed to repeatedly mention the number of his prior felony convictions. According to Randolph, allowing the prosecution to mention the number of his prior felony convictions was unfairly prejudicial, because the negative connotation associated with the number of convictions "prevented the jury from fairly weighing and balancing the credibility of the witnesses."
 ¶ 8. The State counters that Randolph suffered no prejudice. We agree. The record clearly reflects that the trial judge made an on-the-record determination to allow the admittance of the prior felony convictions after weighing the relevant Peterson
factors. The court made its ruling based on the fact that the defense's case was based on the theory that the police officers were lying about Randolph having confessed to the crime. Since the case rested on whether the jury believed the police officers or Randolph, credibility was a central issue. Accordingly, the trial judge properly allowed the prosecution to impeach Randolph's credibility with his previous felony convictions. In order to lessen the prejudicial effect of the prior convictions, the court did not permit the State to establish the nature of those felonies. The court only permitted the State to establish the fact that Randolph had been previously convicted of five felonies. Consequently, Randolph suffered no prejudice, because the court removed the potential for prejudice by not allowing the prosecution to mention that his previous convictions were for burglary, the identical crime for which he was being tried.
 ¶ 9. Furthermore, the court gave the following limiting instruction to the jury: "The court instructs the jury that the fact that the Defendant has previous felony convictions may only be considered to determine the weight and credibility of the Defendant's testimony. It may not be considered as substantive evidence of the Defendant's guilt in this case." This instruction further lessened the possibility that the jury convicted Randolph because of his past criminal actions. This issue is without merit.
(2) Written Statement
 ¶ 10. In his second issue, Randolph contends that the trial court erred in admitting his written statement into evidence as an exhibit to the testimony of the investigating officer who was present when the statement was made. Randolph argues that, since he testified that he did not make a confession and because the alleged confession was not recorded or adopted by him, only the police officer's testimony as to what Randolph said, and not the written statement, should have been admitted. According to Randolph, allowing the written statement into evidence reinforced the officer's testimony about Randolph's alleged confession and operated to place too much emphasis on that portion of the evidence. As a result, Randolph argues that his conviction must be set aside, because it cannot be ascertained whether the jury's verdict was based on improperly admitted evidence. *Page 640 
 ¶ 11. Randolph relies on Cobb v. State, 734 So.2d 182
(Miss.Ct.App. 1999), as support for his contentions. In Cobb, the trial court admitted a written statement into evidence as an exhibit to the testimony of the investigating officer who took the statement, despite the fact that Cobb refused to sign the written statement and denied ever making a confession. Cobb,734 So.2d at 184 (¶ 5). On appeal, we held that when there is no recording, in some form, of a statement that a defendant denies having made, the prosecution may only introduce the statement by the testimony of the officers who took the statement. Id. at (¶ 8). We further held that "[t]o permit the jury, in addition to hearing such testimony from the stand, to have a written version of the statement in the jury room during its deliberations improperly permits too much emphasis to be placed on this evidence." Id.
 ¶ 12. However, there is a meaningful distinction between the facts in Cobb and those here. Here, Randolph signed the written statement that was admitted as an exhibit to the testimony of the investigating officer. Moreover, the officers who took the statement testified that Randolph signed the statement after it was printed. Cobb is limited to those situations in which the accused has not signed or adopted the written statement and later denies having made it.
 ¶ 13. Notwithstanding Randolph's vehement denial that he made the written confession, we find that his signature on the statement, along with the testimony of the investigating officers that Randolph signed the statement, was sufficient to permit its admission into evidence. This issue is without merit.
(3) Instructing the Jury
 ¶ 14. In his final issue, Randolph contends that the trial court erred in the granting and refusal of specific jury instructions. "In determining whether error lies in the granting or refusal of instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Johnson v. State,823 So.2d 582, 584 (¶ 4) (Miss.Ct.App. 2002) (quoting Hickombottom v.State, 409 So.2d 1337, 1339 (Miss. 1982)). "In other words, if the instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." Milano v. State, 790 So.2d 179, 184 (¶ 14) (Miss. 2001). Defendants do not have an absolute right to have their jury instructions granted. "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence." Heidel v. State, 587 So.2d 835, 842 (Miss. 1991).
 ¶ 15. Randolph specifically complained of the granting of instruction S-3, which dealt with aiding and abetting. Instruction S-3 states:
 The court instructs the jury that each person present at the time in which a crime is committed, and who knowingly, willfully, and feloniously consents to and aids, abets, or encourages another in the commission of a crime, is as much a principal as if he had with his own hand committed the whole offense.
Randolph argues that the instruction could have confused the jury as to the standard of evidence required to convict him as an aider, abettor, or encourager. Randolph further argues that the instruction improperly stated the law because it was not in compliance with the aiding and abetting *Page 641 
jury instruction adopted by the Mississippi Supreme Court inMilano.
 ¶ 16. In Milano, our supreme court adopted the Fifth Circuit's "Pattern Jury Instruction on Aiding and Abetting" in order to cure continuous litigation and confusion over the issue. The instruction is as follows:
 The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
 If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
 Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
 Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
 In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntary participated in its commission with the intent to violate the law.
 Milano, 790 So.2d at 185 (¶ 21) (quoting Fifth Cir. Pattern Jury Instructions (Criminal) 2.06 (Aiding and Abetting) (Agency) (1998)).
 ¶ 17. Randolph urges us to adopt a per se rule requiring reversal if the S-3 type instruction is given instead of theMilano instruction. We decline to do so. The instruction complained of here is not the same as the one found to be erroneous in Milano.[2] The problem with the instruction in Milano was that it permitted the jury to find the defendant guilty as an aider or abettor if the defendant "did any act which is an element of the crime." Milano, 790 So.2d at 184 (¶ 16). Here, the instruction clearly did not instruct the jury in that way. Furthermore, the court gave instruction S-2, which states:
 The court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that the defendant, Donald Randolph, acting alone or with another, on or about the 25th day of November, 2001, did unlawfully, willfully, feloniously, and burglariously break and enter the dwelling house of Johnnie Bell, with the intent to steal, then you shall find the defendant guilty *Page 642 
as charged. If the State fails to prove one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty.
This instruction further highlighted the State's obligation to prove each element of the charged offense in order to obtain a guilty verdict. Therefore, we find that the instructions taken as a whole fairly, although not perfectly, announced the applicable law. This issue is without merit.
 ¶ 18. Randolph also agues that it was error for the trial court to deny his proposed instruction D-1, which states:
 Each person testifying, under oath, is a witness. You have the duty to determine the believability of a witness. In performing this duty, you must consider each witness's intelligence, the witness's ability to observe and accurately remember, the witness's sincerity, and the witness's demeanor while testifying. You must consider also the extent to which the witness is either supported or contradicted by other evidence; the relationship the witness may have with either side and how the witness might be affected by the verdict.
 In weighing a discrepancy by a witness or between witnesses, you should consider whether it resulted from an innocent mistake or a deliberate falsehood, and whether it pertains to a matter of importance or an unimportant detail.
 You may reject or accept all or any part of the witness's testimony and you may reject part and accept other parts of witness's testimony.
 After making your own judgment, you will be given [sic] the testimony of each witness the credibility, if any, as you may think it deserves.
 ¶ 19. The court denied this instruction as repetitive of its own instructions. We agree. Randolph's proposed instruction was adequately covered by Court Instruction C.01, which states in part:
 You are the sole judges of the facts in this case. Your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case.
Therefore, we find no error on the part of the trial court in denying Randolph's proposed instruction, because the instruction was fairly covered elsewhere in the instructions. This issue is without merit.
 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OFCONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVEYEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS, TO BE SERVED WITHOUT THE BENEFIT OF PAROLE ORPROBATION OR REDUCTION OR SUSPENSION, AND PAYMENT OF A $10,000FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TOLOWNDES COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
[1] In Peterson v. State, 518 So.2d 632 (Miss. 1987), the Mississippi Supreme Court held that, before permitting a defendant to be impeached by his prior convictions, the trial judge must weigh certain factors and make an on-the-record determination that the probative value of the prior convictions outweighs its prejudicial effect. The relevant factors to be considered include the impeachment value of the prior offense, the date of the prior conviction, similarity between the past and presently charged offenses, importance of defendant's testimony, and whether credibility is central. Peterson,518 So.2d at 636.
[2] In Milano, the proposed jury instruction was as follows: "If you believe from the evidence beyond a reasonable doubt that the defendant, Timothy John Milano, did willfully, unlawfully, and feloniously do any act which is an element (capital murder/kidnaping) with which he is charged, or, immediately connected with it, or, leading to its commission, then and in that event, you should find the defendant guilty of (capital murder/kidnaping)." Milano, 790 So.2d at 184 (¶ 16). *Page 643