560 So.2d 1017 (1990)
Eric PRITCHETT
v.
STATE of Mississippi.
No. 07-KA-58855.
Supreme Court of Mississippi.
April 11, 1990.
As Modified on Denial of Rehearing May 16, 1990.
Julie Ann Epps, Rienzi, for appellant.
Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:

STATEMENT OF THE CASE
This is an appeal from the Circuit Court of Clay County wherein Eric Pritchett [Eric] was convicted of involuntary manslaughter pursuant to Mississippi Code Annotated, Section 97-3-47 (1972), and sentenced to fifteen years in the custody of the Mississippi Department of Corrections, with fifteen years suspended and five years probation conditioned on the defendant serving one year in the Clay County Jail. He is now out on bond pending this appeal. Eric assigns nine errors, only one of which has merit and requires that we reverse his conviction.

STATEMENT OF THE FACTS
On September 2, 1986, shortly after 4:00 p.m., the seventeen year old appellant, Eric, had an argument with his sister, Treva, at their home in West Point, Mississippi. Quite upset Treva ran to the shop of their step-father, Danny Pennington's [Danny], to summon his assistance.
When Danny and Treva returned to the house, Eric and his mother, Louise Pennington, were standing on the porch. After Treva and Louise had gone into the house, an altercation ensued between Danny and Eric. Neither Treva nor Louise testified at trial. Therefore, Eric provided to the jury the only testimony regarding the struggle.
According to Eric, his fifty-one year old step-father was the aggressor as he snatched him by the wrist, but Eric managed to jerk away. After Eric jerked away, Danny grabbed him by the neck, spun him around, and put Eric in headlock thereby cutting off his breath. As Eric struggled to free himself, both men fell backward onto the porch. Although Danny was on the bottom, he maintained control by wrapping his legs around Eric's waist and pulling Eric's neck and slapping him. Eric attempted to free himself by swinging his elbows, but he could not break Danny's grip.
Shortly thereafter, Danny said, "Eric, this is foolish," and he allowed Eric to get *1018 up. Danny simply rose to his feet and appeared to be confused. As Eric walked away, Danny "pulled up his pants, ran his fingers through his hair, and just walked back and forth and fell flat on his face like he had lost consciousness." In fact he had lost consciousness as a result of a heart attack.
The state's theory of the case was that licks or multiple blows were delivered to Danny's torso and that the acts of the defendant contributed directly to Danny's heart attack and his subsequent demise. Eric, on the other hand, contended at trial and still maintains that he acted justifiably in self-defense and that Danny's death was a result of an accident or misfortune.
Medical testimony corroborates Eric's theory of the case. Dr. Ben Martin, the state's pathologist, performed an autopsy on Danny's body. He documented bruises on Danny's head, right cheek, bridge of the nose, and chest. These bruises, however, were consistent with a struggle and a fall. Moreover, none of the injuries alone would have caused Danny's death. Of more significance was Martin's other findings.
According to Martin, Danny had an abnormal heart. Martin described a normal heart as having three major vessels that supply it. The main one is the anterior descending branch of the left coronary artery. In Danny's case, however, he had two anterior coronary arteries, a "very uncommon characteristic and a quite rare situation." Moreover, these vessels were smaller than a normal size anterior descending coronary artery. To make matters worse, one of these vessels was thrombosed, plugged with a clot due to significant coronary arteriosclerosis.
It was Martin's opinion that the clot had been there for at least four or five days but no more than two weeks. The one vessel that was operating apparently was sufficient to allow Danny to conduct his normal activities. On the other hand, Martin insisted that the stress and trauma related to the bruises compromised Danny's coronary circulation which caused his heart to fibrillate, beat irregularly. It could take several minutes from the time the heart begins to fibrillate until one is rendered unconscious. Moreover, Danny was probably unaware of his heart condition because he did not necessarily feel any pain because he still had blood coming into his heart.
A second expert also conducted an autopsy on Danny's body at the state's request. Eric had this expert, Dr. Steve Haynie, to testify in his behalf. Haynie indicated that the bruises on Danny's body were not consistent with lethal or fatal injuries. His findings concerning Danny's heart condition concurred with Martin's. In particular Haynie emphasized that Danny's heart condition was very serious and virtually any type of stress would be detrimental. Consequently, any of the blows by itself to the body would not have caused Danny's death without his heart condition.
Many other witnesses testified, but their testimony will only be discussed where necessary in resolving the following issue. At the conclusion of the trial, the jury found Eric guilty of involuntary manslaughter. A sentencing hearing was held, and the judge sentenced Eric to fifteen years with fifteen years suspended and five on parole conditioned upon his serving one year in county jail.[1] Eric asserts via the following proposition that the trial court committed reversible error:
THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUESTS FOR A PEREMPTORY INSTRUCTION, JUDGMENT NOTWITHSTANDING THE VERDICT AND MOTION FOR NEW TRIAL WHERE THE DEFENDANT WAS THE ONLY EYE-WITNESS AND HIS TESTIMONY ESTABLISHED THAT THE HOMICIDE WAS JUSTIFIABLE AND/OR EXCUSABLE, AND HIS TESTIMONY WAS NOT MATERIALLY CONTRADICTED BY OTHER EVIDENCE OR BY THE PHYSICAL *1019 FACTS SURROUNDING THE ALLEGED OFFENSE

DISCUSSION OF THE LAW
In this assignment Eric insists that the trial court erred in not directing a verdict in his favor and not submitting an instruction to the jury based on the Weathersby Rule.[2]
Since Eric offered some evidence on his own behalf, the proper standard of review on appeal is to consider all of the evidence in the light most favorable to the verdict. "The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence." Wetz v. State, 503 So.2d 803, 808 (Miss. 1987); see also Jordan v. State, 513 So.2d 574, 578 (Miss. 1987).
After reviewing the entire record in this case, particularly Eric's testimony and the expert witnesses, it is not clear that Eric could have committed involuntary manslaughter, even when all inferences are given to the state. There is no evidence that Eric knew his father had a severe heart condition. Other witnesses, including Danny's natural sons indicated that they did not know of his condition, and the experts testified that Danny himself may not have known. In fact, no one knew Danny had this rare heart condition. All the testimony points to the fact that Danny grabbed Eric first and a struggle ensued.
There is no dispute that Danny was the aggressor, and he put a choke hold or headlock on Eric. There is no indication that Eric used excessive force or weapons to free himself from his step-father's clutches. As a matter of fact, the sheriff conclusively found that no weapons were used. There is a minor discrepancy about whether Danny's body was face down or on its left side. But, this is of little significance since the doctors testified that all of the bruises on Danny's body were consistent with a fall. There was much evidence, but the inferences do not rise to the level of showing that Eric committed involuntary manslaughter.
Furthermore, because Eric was the only eye witness to a homicide, his version of what happened, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by credible evidence, physical facts or facts of common knowledge. Blanks v. State, 547 So.2d 29, 33 (Miss. 1989) (emphasis added); Lanier v. State, 533 So.2d 473, 490 (Miss. 1988); Jordan, supra, 513 So.2d 574, 579 (Miss. 1987).
On the other hand, however, this Court has warned repeatedly that where circumstances are shown in the evidence which materially contradict the defendant's version of self-defense, the jury is not required to accept his version of self-defense along with the conflicting evidence and any unfavorable inferences therefrom. Harveston v. State, 493 So.2d 365, 371 (Miss. 1986) (emphasis added); see also, Mullins v. State, 493 So.2d 971, at 975 (Miss. 1986); Jordan, supra, at 579. "In those cases in which the defendant is the only eyewitness to the slaying, and in which the Weathersby Rule is inapplicable, it then becomes a jury issue as to whether to believe or not believe the defendant's testimony of how the slaying occurred and to either convict or acquit". Blanks, supra, 547 So.2d at 34-5.
Based on the testimony of the entire trial, it is appropriate to take Eric's version of the facts. To avoid much repetition, the testimonies of the doctors concerning how Danny may have sustained the bruises are important, but they do not substantially contradict Eric's account of the altercation. Cf. Wetz, 503 So.2d at 809 (expert testimony of doctors and paramedics plus physical evidence substantially contradicted defendant's version); Johnson v. State, 475 So.2d 1136, 1148 (Miss. 1985) (testimony of *1020 doctors and the physical facts substantially contradicted the defendant's version of what happened). The fact that there was no substantial contradiction in Eric's statements before and during the trial is also important. See, e.g., May v. State, 460 So.2d 778, 782 (Miss. 1984) (where defendant's voluntary statement made to law enforcement officers shortly after the incident conflicts in substantial particulars with his or her testimony at trial, it is significant factor in taking the case from under the Weathersby Rule); Simpson v. State, 497 So.2d 424, 432 (Miss. 1986) (where statement to the police contradicts in material particulars to testimony at trial, defendant not entitled to peremptory instruction); Harveston, supra, 493 So.2d at 371 (unexplained flight may be offered as an inference of guilt thereby negating need of the rule).
We, therefore, hold that Eric was entitled to a peremptory instruction based on the Weathersby Rule, and the trial court erred in failing to direct a verdict for him. The testimonies of the doctors plus Eric's testimony indicate that Danny died because of a heart attack, which was not caused by anything he did. The state presented no proof which substantially contradicted Eric's version; consequently, we must reverse this cause.
REVERSED AND APPELLANT DISCHARGED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] Because Eric was a minor at the time of the incident, his case was originally brought before the Youth Court of Clay County. A transfer hearing was held. After a finding of probable cause, this case was transferred to the Clay County grand jury where he was subsequently indicted.
[2] See, Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933). It provides that in cases where the defendant is the only eye witness to a homicide, his/her version of what happened, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by credible evidence, physical facts or facts of common knowledge.