CARLTON, J.,
for the Court:
¶ 1. On October 6, 2011, a Madison County grand jury indicted Clark for kidnapping and aggravated domestic violence. After a trial held on March 12, 2011, a jury found Clark guilty of aggravated domestic violence by strangulation but acquitted Clark of the kidnapping charge. The trial judge sentenced Clark as a habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC), to run consecutively to a previous sentence. Clark now appeals his sentence and conviction. Finding no error, we affirm.
FACTS
¶ 2. On June 18, 2011, Tremekia Sims arrived home to the apartment she shared with her sister at the Canton Garden Apartments in Canton, Mississippi. Sims’s boyfriend, Clark, was waiting at the apartment, and upon Sims’s arrival, Clark expressed anger that Sims had been out all night. Sims testified that Clark “ran up and caught [her] around the waist and around the neck” and ordered her to open the door to the apartment before he broke her neck. Clark threw Sims into the apartment and threatened that “if [he] wanted to do something to [her], [he could] easily get [her].” Sims testified that the two began to argue. Sims stated that after she answered a phone call from a girlfriend, the argument escalated into a fight. Sims explained that Clark thought that based on Sims’s phone conversation, she was cheating on him.
¶ 3. On the following Monday, June 20, 2011, Sims told Clark that she was going to work, and she dropped him off at his mother’s house. Instead of going to work, Sims went to her cousin’s house because she did not want to go to work with bruises on .her. Sims explained that she received the bruises after Clark hit her and pushed her into a wall. Sims also testified that after leaving her cousin’s house on Monday, she went to the hospital to receive treatment for pain in her ribs resulting from Clark hitting her.
¶ 4. Sims’s friend put her in touch with Virginia Parker of the Canton Victims’ Assistance Program. Parker contacted Sims after the 2011 incident and took photographs of Sims to document the bruises on her arms and face. Parker and Sims both testified that Clark previously abused Sims in 2011. At trial, Parker also identified three color photographs of the prior injuries received by Sims in 2010. These photographs were admitted into evidence without objection.
¶ 5. After interviewing Sims, Parker contacted Kim Henderson, a children’s sexual abuse investigator for the Madison County Sheriffs Department, about her conversation with Sims. Investigator Henderson met with Sims and photographed her recent injuries. Sims testified that she told Investigator Henderson that “[Clark] jumped on me for the weekend.” Investigator Henderson provided *132 testimony recounting the details of her conversation with Sims, wherein Sims told Investigator Henderson that Clark had written a suicide note trying to convince Sims to come home. Sims told Investigator Henderson that as she put her key in the door of the apartment, Clark approached her from behind, put one hand around her neck and the other hand over her mouth, and pushed her into the apartment.
¶ 6. Investigator Henderson filled out an affidavit for Clark’s arrest, and she and another deputy picked him up. Clark admitted to Investigator Henderson that he and Sims had been arguing and that “he may have caused the bruises or scratches to her neck by trying to defend himself.”
¶ 7. At a trial held March 12, 2012, the jury heard testimony from Sims, Investigator Henderson, and Parker. Sims informed the jury that Clark had previously served jail time for domestic assault, stemming from abuse in their relationship. The transcript shows that with regard to the kidnapping charge, Sims began testifying to a different version of events than what her statement to police officers reflected. At trial, Sims explained that she did not want to go forward with the kidnapping charges against Clark — only the domestic-violence charge — and she refuted her previous statements to police officers that Clark had forcefully refused to let her leave the apartment during the weekend of June 18. Sims instead stated that she could have left whenever she wanted, but she never attempted to leave. The court, observing that it appeared Sims did not “want her recollection refreshed” granted the State’s request to treat Sims as a hostile witness.
¶ 8. At the close of the State’s case-in-chief, Clark moved for a directed verdict. The trial court denied the motion. Clark chose not to testify, and the defense rested without calling any witnesses. The jury returned a verdict acquitting Clark of the kidnapping charge, but finding him guilty of aggravated domestic violence. The trial court sentenced Clark as a habitual offender to serve twenty years in the custody of the MDOC. Clark filed a motion for a new trial or a judgment notwithstanding the verdict, which the trial court denied. On appeal, Clark asserts the following issues: Whether sufficient evidence was presented at trial to support the verdict and whether evidence of a prior domestic-assault charge was properly admitted at trial.
STANDARD OF REVIEW
¶ 9. The standard of review for motions for a directed verdict and a JNOV is abuse of discretion. Smith v. State, 925 So.2d 825, 830 (¶ 10) (Miss.2006) (citing Brown v. State, 907 So.2d 336, 339 (¶8) (Miss.2005)). In considering whether the evidence is sufficient, the court must determine whether a reasonable, fair-minded juror could find that the accused committed the offense charged beyond a reasonable doubt, and that every element of the offense existed given the evidence presented. Brown, 907 So.2d at 339 (¶ 8) (citation omitted). If the evidence fails to meet this test, then it is insufficient to support a conviction. Carr v. State, 208 So.2d 886, 889 (Miss.1968). However, where reasonable and fair-minded jurors may have found the appellant guilty, we must affirm the judgment of the trial court. McClendon v. State, 852 So.2d 43, 47 (¶ 11) (Miss.Ct.App.2002) (citing Baker v. State, 802 So.2d 77, 81 (¶ 13) (Miss.2001)).
¶ 10. We also review the admission or exclusion of evidence under an abuse-of-discretion standard of review. Jones v. State, 904 So.2d 149, 152 (¶ 7) (Miss.2005).
DISCUSSION
I. Sufficiency of Evidence
¶ 11. Clark argues that the evidence presented at trial was insufficient to *133 support the guilty verdict. Clark submits that Sims, the victim, testified that Clark only put his hand over her throat and mouth momentarily, and that Clark did not strangle her. Clark also asserts that Investigator Henderson’s testimony describing Sims’s statement, in which she claimed that Clark beat her, constitutes inadmissa-ble hearsay evidence, and thus could not lawfully be considered as substantive evidence in support of his aggravated-domestic-violence conviction.
¶ 12. “A motion for a directed verdict challenges the sufficiency of the evidence.” McMillan v. State, 6 So.3d 444, 446 (¶ 8) (Miss.Ct.App.2009) (citing Bush v. State, 895 So.2d 886, 843 (¶ 16) (Miss.2005)). In Bush, the Mississippi Supreme Court expressed that “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ” Id. (quoting Bush, 895 So.2d at 843 (¶ 16)). If any rational trier of fact, when viewing the evidence in the light most favorable to the State, could have found that the essential elements of the crime existed beyond a reasonable doubt, this Court “will affirm the denial of a motion for a directed verdict.” Id. “If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.” Id.
¶ 13. Mississippi Code Annotated section 97 — 3—7(4)(a)(iii) (Supp.2012) provides: “A person is guilty of aggravated domestic violence who .... [strangles, or attempts to strangle ..., a person who has a current or former dating relationship with the defendant....” The statute defines “strangle” as “restrict[ing] the flow of oxygen or blood by intentionally applying pressure on the neck, throat or chest of another person by any means or to intentionally block the nose or mouth of another person by any means.” See Miss.Code Ann. § 97-3-7(5)(a) (Supp.2012) (emphasis added).
¶ 14. Clark claims that at trial, Sims denied that Clark ever restricted the flow of oxygen or blood into her body by intentionally applying pressure on her neck or throat, nor did he ever restrict the flow of oxygen or blood by blocking her nose or mouth. However, a review of the record shows that Sims indeed testified at trial that Clark held his arm around her neck and his hand over her mouth, albeit momentarily. The statutory elements, stated above, are also satisfied for this offense by proof that Clark intentionally blocked the nose and mouth of Sims. The trial court also admitted into evidence Sims’s June 21 statement to Investigator Henderson. This statement by Sims reflected that on June 18, 2011, Clark ran up to Sims and “had one hand around [her] mouth and his arm around [her neck] .... and said open the door bitch before I break your neck in.” The statement was signed by both Investigator Henderson and Sims. Investigator Henderson provided testimony detailing her interview with Sims, confirming that she saw bruises on Sims, and Investigator Henderson testified that based on Sims’s statement and the visible bruises, she arrested Clark. Investigator Henderson also testified that Sims specifically told her that Clark “approached her from behind, [put] his hand around her neck[,] ... and then he put his other hand over her mouth and pushe[d] her into the apartment.”
¶ 15. Upon review, the record reflects no objection by the defense to the admission into evidence of Sims’s statement inculpating Clark as the perpetrator and cause of the bruises. This Court recognizes that the failure to make a contem *134 poraneous. objection waives the issue on direct appeal. Wells v. State, 698 So.2d 497, 514 (Miss.1997). Additionally, Mississippi Rule of Evidence 103(a)(1) provides that
[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context....
¶ 16. Here, the record reflects no contemporaneous objection by Clark’s counsel; thus, the issue is procedurally barred. See Foster v. State, 639 So.2d 1263, 1289 (Miss.1994). We recognize that “[t]he defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment [of error] on appeal.” Id. Such error exists where it affects substantial rights of the defendant. Grubb v. State, 584 So.2d 786, 789 (Miss. 1991). The plain-error doctrine includes the review of errors that “seriously affect the fairness, integrity or public reputation of judicial proceedings.” United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Upon review, we find no plain error in the admission of Sims’s pretrial statement to investigators into evidence, since Sims also testified at trial regarding the same altercation with Clark.
¶ 17. In denying the defense’s motion for a directed verdict, the trial court quoted the definition of strangle found in section 97-3-7 and held as follows: “[T]here is testimony that [Clark] put his hand over [Sims’s] mouth and had his arm around her neck, and I believe that’s sufficient considering the evidence in the light most favorable to the State, which is the standard.” Upon review of the record, and in recognizing that “all evidence supporting a guilty verdict is accepted as true, and the prosecution must be given the benefit of all favorable inferences that can be reasonably drawn from the evidence,” we concur with the trial court’s determination that based on the evidence presented, a reasonable and fair-minded juror could have found Clark guilty of aggravated domestic violence by either strangulation or attempted strangulation pursuant to section 97-3-7. See Cortez v. State, 876 So.2d 1026, 1030 (¶ 11) (Miss.Ct.App.2003) (citing Nelson v. State, 839 So.2d 584, 586 (¶3) (Miss.Ct.App.2003)). The record contains sufficient evidence to support the verdict finding that Clark “intentionally block[ed] the nose or mouth of [Sims] by any means.” Miss.Code Ann. § 97-3-7(5)(a).
II. Admission of Evidence
¶ 18. Clark next argues that the trial court erred in admitting into evidence testimony describing a prior incident of aggravated domestic violence and abuse by Clark. Clark submits that admitting the prior domestic-assault charge from June 25, 2010, was highly prejudicial to the defense. Clark cites to Mississippi Rule of Evidence 404(b) and claims that the State improperly used the prior charge to show character and that Clark acted in conformity with such character.
¶ 19. We review the admission or exclusion of evidence under an abuse-of-discretion standard of review. Jones, 904 So.2d at 152 (¶ 7). The admissibility of evidence of other crimes, wrongs, or acts is controlled by Mississippi Rule of Evidence 404(b). Under Rule 404(b), evidence of prior bad acts is generally inadmissible as character evidence or to show a defendant acted in conformity therewith. However, Rule 404(b) provides that evidence of prior bad acts “may ... be admissible for other purposes such as proof of motive, opportu *135 nity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Additionally, if admissible for a proper purpose, then evidence of prior bad acts “must pass through the filter of Rule 403 of the Mississippi Rules of Evidence.” Wilson v. State, 956 So.2d 1044, 1047 (¶ 9) (Miss.Ct.App.2007). Rule 403 instructs that if the prejudicial effect of the evidence substantially outweighs the probative value, then the evidence should be excluded. See M.R.E. 403. With respect to the admission of the disputed evidence, the record shows the State submitted three photographs depicting the prior abuse of Sims by Clark on June 25, 2010.[1]
¶ 20. Following the pretrial hearing dealing with the matter of prior domestic abuse, the trial judge determined this evidence was admissible, providing the following Rule 403 ruling and findings:
I believe doing the balancing test under [Rule] 403, considering the admissibility under [Rule] 404(b), I believe that evidence of that assault is admissible under 404(b) to show opportunity, intent, absence of mistake, and I also believe that the evidence of that incident — the probative value is not substantially outweighed by the danger of unfair prejudice to the defendant or confusion of the issues or misleading the jury. So for that reason, the State will be allowed to get into the June 25, 2010 incident relative to [Sims] in this case.
¶ 21. A review of the record reveals that the trial court found the evidence admissible for permissible purposes — to show opportunity, intent, and absence of mistake — and then properly filtered this evidence through the Rule 403 balancing test in determining that the probative value was not substantially outweighed by any prejudice. See Wilson v. State, 83 So.3d 421, 437-38 (¶¶ 42-44) (Miss.Ct.App.2011). The trial court also provided limiting instructions to the jury for the admission of the prior bad act. The trial court allowed the State to submit only three photographs documenting the June 25 abuse into evidence; The evidence in the record supports the trial judge’s findings under Rule 403 in admitting the evidence of Clark’s prior bad acts as relevant to proper purposes of showing motive, opportunity, intent, and absence of mistake, and the record reflects no abuse of discretion in the admission of this evidence. See Wilson, 83 So.3d at 437-38 (¶¶ 42-44). Accordingly, we affirm the judgment of the trial court.
¶ 22. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED DOMESTIC VIOLENCE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE TO RUN CONSECUTIVELY TO A SENTENCE PREVIOUSLY IMPOSED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Sims also testified at trial relating the facts of the June 25 abuse to the jury, referring to it as "our first incident.” Sims stated that after the June 25 incident, she and Clark broke up, but they rekindled their romance six months later.