# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00783-COA

JEFFERY MITCHUM A/K/A JEFFREY ODELL                    APPELLANT
MITCHUM

v.

                                                       APPELLEE

STATE OF MISSISSIPPI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2013 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP |
| | JARED KEITH TOMLINSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, GRATIFICATION OF LUST, AND SENTENCED TO FIFTEEN YEARS, AND COUNT II, SEXUAL BATTERY, AND SENTENCED TO THIRTY YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 09/23/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND CARLTON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Jeffery Mitchum appeals his convictions of sexual battery and gratification of lust.

He argues that: the evidence was insufficient to support the verdict, the verdict was against

the overwhelming weight of the evidence, and the trial court erred when it allowed hearsay

statements. We find no error and affirm.

## FACTS

¶2. In 2011, Mitchum lived with his mother, Tricia Lewis, and his stepfather, Brad Lewis. Tricia's daughter, Alice Jones,[1] also resided with them. She was four years old. Mitchum and Alice were half-siblings. A total of nine people lived in the Lewises' three-bedroom house. Because there were few bedrooms, Mitchum slept on the living-room couch.

¶3. On August 31, 2011, Alice was taken to the University of Mississippi Medical Center ("UMC") pediatric emergency room. Tricia had noticed a rash on Alice's vaginal area that caused redness and pain around her stomach. This was not the first time Alice had experienced these rashes.

¶4. While at the emergency room, Alice was examined by Dr. Mary Catherine Stone. Dr. Stone testified that Alice was brought to the emergency room because of a sexual-assault complaint. Alice was accompanied by Tricia and Brad. During the examination, Dr. Stone observed redness and swelling in Alice's vaginal area. Additionally, Dr. Stone noticed that Alice's "vaginal opening was a little bit more generous than what you normally expect for a child her age." Alice told Dr. Stone that Mitchum had "tampered with her sexually." Dr. Stone testified that when Alice discussed what had occurred between her and Mitchum, she was very clear and had no hesitation. However, Dr. Stone could not confirm that Alice was sexually assaulted.

¶5. Tiffany Kay Robinson, an employee of the Department of Human Services, was

---

[1] The names of the minor and her family have been changed for confidentiality purposes.

contacted to speak with Alice and her parents. She met them at the emergency room. Tiffany testified that Tricia told her that she and Alice were going to stay in a hotel room and that Mitchum was going to move out. Tiffany visited the Lewises' home and found that it was safe for Alice to live in.

¶6. Dr. Scott Benton, the State's expert witness, testified that Alice was referred to him by the UMC pediatric emergency department. Dr. Benton initially spoke with Tricia, who told him that she became concerned about Alice's condition when Alice made complaints about painful urination. While bathing Alice, Tricia had noticed that Alice's vaginal area was swollen. Tricia questioned Alice, and Alice told her that Mitchum touched her vaginal area. Tricia told Dr. Benton that Mitchum had touched Alice with his fingers and something Alice referred to as a "jo-jo," which Alice described as a "stick with hair." Dr. Benton conducted a medical and case history on Alice, along with a physical examination, to determine whether sexual abuse had occurred. He concluded that a sexual assault had occurred.

¶7. Investigator Shawn Terwilliger interviewed Mitchum on four occasions. Mitchum denied the allegations of sexual abuse. Initially, Mitchum told Investigator Terwilliger that Alice had never slept on the couch with him. He also denied that he had ever masturbated while on the couch. During his third interview, he admitted that Alice had slept with him on the couch, because she got scared. During this same interview, he also admitted that he had masturbated at some point while on the couch. Mitchum acknowledged that he had lied about the masturbation, because he was "embarrassed."

¶8. Alice testified as a defense witness. On direct examination, she denied that Mitchum

had ever sexually abused her or touched her inappropriately. On cross-examination, Alice admitted that she remembered telling the State's attorney that Mitchum had touched her "down below."

¶9. Mitchum also testified and denied the allegations. He testified that when he was called in for interrogation by the police department, he was asked to give a mouth swab to check for DNA. He complied.

¶10. In October 2012, Mitchum was convicted of sexual battery, a violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2006), and gratification of lust, a violation of Mississippi Code Annotated section 97-5-23(1) (Rev. 2006). He was sentenced to thirty years for the sexual-battery conviction and fifteen years for the gratification-of-lust conviction, to be served concurrently. He was also required to register as a sex offender upon his release. Mitchum filed a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial. The motion was denied. It is from this judgment that Mitchum now appeals.

## ANALYSIS

### I. Sufficiency of the Evidence

¶11. Mitchum argues that the trial court abused its discretion when it denied his motions for a directed verdict and judgment notwithstanding the verdict. Mitchum asserts that the evidence was insufficient to show beyond a reasonable doubt that he committed sexual battery and gratification of lust.

¶12. In *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), the Mississippi Supreme Court held:

4

In considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."

(Quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). Motions for a directed verdict and a judgment notwithstanding the verdict challenge the legal sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). The court will not reverse unless reasonable and fair-minded jurors could only find the accused not guilty. *Ferguson v. State*, 137 So. 3d 240, 243 (¶6) (Miss. 2014).

¶13. Mitchum was convicted of violating both section 97-3-95(1)(d) and section 97-5-23(1). Under section 97-3-95(1)(d), "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Under section 97-5-23(1), a person is guilty of fondling a child if he or she is eighteen years or older, and, "for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen years, with or without the child's consent."

¶14. Mitchum asserts that under both statutes, there was no credible evidence submitted that established the necessary elements beyond a reasonable doubt. To support this argument, Mitchum contends that a review of the record reveals that the bulk of the evidence submitted by the State to support the indictment consisted of supposed statements made by Alice but communicated to others via Tricia. Additionally, Mitchum asserts that parts of

5

these statements were never uttered by Alice to the doctors or investigators, and when questioned at trial, Alice denied the claims. Further, Alice told Tricia previously that she made up the entire thing. Mitchum also asserts that there is no physical evidence to prove that the acts occurred.

¶15. This Court, in *Williams v. State*, 879 So. 2d 1126, 1128 (¶5) (Miss. Ct. App. 2004), held "the absence of physical evidence does not negate a conviction where there is testimonial evidence." (Quoting *Graham v. State*, 812 So. 2d 1150, 1153 (¶9) (Miss. Ct. App. 2002)). Williams argued that aside from the victim's testimony, there was no direct physical evidence that linked him to the crime. *Id.* However, this Court found that there was enough evidence to support his guilty verdict. *Id.* at (¶6).

¶16. On direct examination, Alice testified:

Q. Has anybody ever touched you –

A. No.

Q. – where it hurts? Okay. Has [Mitchum] ever touched your down below?

A. No.

Q. Have you ever seen [Mitchum]'s down below?

A. No.

Q. Did Jeffrey ever put a stick in your mouth?

A. No.

On cross-examination. Alice testified:

Q. . . . And do you remember you telling me that he touched you once?

6

A.    (Witness nods head affirmatively.)

Q.    You remember that?  And you told me that when you told him to stop, he stopped?  Do you remember telling me that?

A.    (Witness nods head affirmatively.)

Q.    And do you remember me telling you about - - you told me that he touched you with a stick?

A.    (Witness shakes head negatively.)

Q.    You don't remember telling me that Friday?

A.    (Witness shakes head negatively.)

Q.    Do you remember telling me something came out of the stick?

A.    No.

Q.    Remember when we talked Friday, okay?

A.    (Witness nods head affirmatively.)

Q.    All right.  You sat in the little chair across from my desk and told me something came out of the stick.  Do you remember what that was?

A.    (Witness shakes head negatively.)

Q.    I'm going to ask that you look at me when I'm talking.  That way you can hear my questions better if you're looking at me, okay?  All right. [Alice], everybody here just wants you to tell the truth.  I know you'd rather be at school today . . . .

. . . .

Q.    And you do remember telling me that [Mitchum] touched you down below?

A.    (Witness nods head affirmatively.)

. . . .

7

¶17. Alice was four years old, and Mitchum was twenty-two years old. Alice acknowledged multiple times that Mitchum touched her. Although she was hesitant on direct examination to state that Mitchum touched her, on cross-examination Alice admitted that she had told the prosecutor of the sexual assault. Based on Alice's testimony and her earlier statements to her mother and the physicians, along with the physical examinations by the physicians, we find that there was sufficient evidence to support the guilty verdict. Therefore, this issue is without merit.

## II. Weight of the Evidence

¶18. Mitchum argues that the he should be granted a new trial, because the weight of the evidence does not support a conviction of sexual battery and gratification of lust.

¶19. This Court reviews a trial court's denial of a motion for a new trial based on an abuse-of-discretion standard. *Butler v. State*, 102 So. 3d 260, 268 (¶23) (Miss. 2012). Similar to the trial court's standard, this Court has the authority to grant a new trial when the Court determines, in its discretion, that the verdict "is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice[.]" *Id.* "If, upon evaluating the evidence in the light most favorable to the verdict, this Court finds itself in disagreement with the jury's verdict, the proper remedy is to grant a new trial." *Patterson v. State*, 37 So. 3d 702, 704 (¶10) (Miss. Ct. App. 2010).

¶20. Mitchum contends that the State failed to submit conclusive evidence to support his conviction. Mitchum argues that the doctors could not determine through physical examination whether sexual abuse had occurred. Additionally, Mitchum points to the fact that Alice denied the allegations later.

¶21.    Alice gave details to the physicians and Tricia that described the sexual abuse that occurred.  A physical examination of her vaginal area showed swelling and redness.  Further, while Alice denied the allegations during direct examination, she admitted during cross-examination that she remembered telling the State attorney that Mitchum had touched her.  Dr. Benton testified that it was his expert opinion that sexual abuse had occurred.

¶22.    When we consider the evidence presented in the light most favorable to the State, we cannot conclude that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.  Accordingly, we find no merit to this issue.

### III.    Hearsay Statements

¶23.    Mitchum argues that the trial court erred when it allowed Dr. Benton to testify regarding the forensic investigation he conducted on Alice, along with the statements she made during the interview.  Mitchum contends that the statements that Alice made to Dr. Benton fail to meet the requirements of an exception to the hearsay rule under Mississippi Rule of Evidence 803(4), "Statements for Purposes of Medical Diagnosis or Treatment." Mitchum argues that the statements were not made for the purpose of promoting medical treatment.  Mitchum contends that the treatment phase of Alice's examination was already completed before Dr. Benton interviewed her.

¶24.    This Court reviews "the admission or exclusion of evidence under an abuse-of-discretion standard of review." *Clark v. State*, 122 So. 3d 129, 132 (¶10) (Miss. Ct. App. 2013) (citing *Jones v. State*, 904 So. 2d 149, 152 (¶7) (Miss. 2005)).

¶25.    Admission of hearsay testimony pursuant to Rule 803(4) is a two-step analysis.  First,

the declarant's motive when making the statement must be consistent with the purpose of promoting treatment; and second, the statement's content must be such as is reasonably relied upon by a physician in treatment. *Wilson v. State*, 96 So. 3d 721, 727 (¶16) (Miss. 2012) (quoting *Branch v. State*, 998 So. 2d 411, 414 (¶10) (Miss. 2008)). In *Branch*, the supreme court found that both prongs of the two-step analysis had been met. *Id.* at 415 (¶¶11, 12). The first was satisfied because the interview with the forensic investigator was crucial to determine if further medical assistance was needed and to judge whether the victim's claims were reliable. *Id.* at (¶11). The second was met when the victim identified her father as the abuser. *Id.* at (¶12); *see Jones v. State*, 606 So. 2d 1051, 1056-57 (Miss. 1992) (victim's statement that identified abuser as member of household is reasonably pertinent to treatment).

¶26. Here, Alice was referred to Dr. Benton by UMC's pediatric emergency department for further evaluation, because Dr. Benton was an expert in this type of medical trauma. In addition to his interview with Alice, Dr. Benton performed a medical and case history and physical examination of Alice. Dr. Benton noticed that Alice had labial adhesions that could be associated with sexual trauma. He asked Alice questions to ascertain whether sexual trauma had occurred. Specifically, he asked her what had happened. Alice gave a detailed description of the sexual abuse that had occurred between Mitchum and her.

¶27. In applying the two-step analysis, we find that the first was satisfied because Alice's interview with Dr. Benton was crucial to determine if Alice needed further medical assistance. The second was satisfied due to the fact that Mitchum was her half-brother who lived in the same household.

¶28. Accordingly, we find that the trial court was within its discretion to admit this

10

evidence.  Therefore, this issue is without merit.

¶29.    **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, GRATIFICATION OF LUST, AND SENTENCE OF FIFTEEN YEARS, AND COUNT II, SEXUAL BATTERY, AND SENTENCE OF THIRTY YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

      **LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**