# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01667-COA

DWAYNE BRYANT                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                   APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/2015 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SECOND-DEGREE MURDER AND SENTENCED TO FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 05/02/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     Dwayne Bryant was found guilty of second-degree murder by a jury in the Circuit Court of Forrest County and sentenced to forty years in the custody of the Mississippi Department of Corrections (MDOC).  He appeals his conviction, arguing that (1) the evidence was insufficient to support a conviction; (2) he was entitled to an acquittal under

*Weathersby*;[1] (3) the trial court erred when it allowed certain photos into evidence; and (4) his right to a fundamentally fair trial was violated by the prosecution's closing argument. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On August 1, 2013, Bryant shot Adrian Walker multiple times, and Walker later died as a result of the gunshot wounds.  Bryant was a resident of Bonhomie Apartments in Hattiesburg, Mississippi.  Bryant and Walker were considered to be neighborhood friends. Walker had previously lived with his girlfriend, Stacy Pollard, a Bonhomie resident and one of Bryant's neighbors.  Though Walker no longer lived with Pollard, he was regularly at Pollard's apartment.  Bryant would sometimes cut Walker's hair, as he did for several residents of the apartment complex. And Walker would often come over when Bryant was grilling, which was a regular occurrence.

¶3.     On the evening that Walker was shot, Bryant asked Walker if he could borrow a grill to cook some food, and Walker agreed.  When Bryant went to Pollard's apartment to get the grill, he found that Walker had already started the coals, and so he decided to stay at Pollard's apartment to grill.  The group at Pollard's apartment included Bryant, his brother Jeremy, Walker, Willie Wilson, and Slozella McDonald.  At trial, Wilson testified that Walker and Bryant had been drinking before she arrived there, and she believed they were drunk.  Bryant testified that he only consumed one alcoholic beverage during the time he was there.  At some point, a conversation between McDonald and Bryant became intense, and

---

[1] *Weathersby v. State*, 165 Miss. 207, 147 So. 481, 482 (1933).

Walker joined in the heated conversation. Bryant became irritated and decided to leave.

¶4.    At trial, Bryant testified that when he announced he was leaving, Walker began cursing at him. Bryant gathered his food off of the grill and started walking back to his own apartment with his brother, Jeremy. Walker followed Bryant and Jeremy, though Wilson and Pollard told Walker not to pursue them. According to Bryant, he went inside his apartment and left the door open for Jeremy to follow. When Jeremy and Walker made it to Bryant's doorway, Jeremy did not come inside because he reportedly did not want to get involved in the argument. Jeremy testified that Walker, who was standing in Bryant's doorway, was still cursing and "fussing" at Bryant. Jeremy also testified that Walker told Bryant that he would physically harm him. Bryant walked back in and out of the house several times, and Walker did not leave Bryant's doorway. At some point, Bryant walked upstairs in his apartment to get his gun, which he testified he kept for protection. Bryant testified that he then went back downstairs to take Jeremy home. Jeremy testified that Walker said "I'm going to get you now," and "started running up in the house," "trying to fight . . . with his fists balled." Similarly, Bryant testified that he heard Walker say, "F--- it. I'm fixing to go ahead and get you now." According to Bryant, Walker flinched, and Bryant pulled out his gun and shot him. Both Bryant and Jeremy testified that Walker was in Bryant's doorway when Walker flinched and Bryant shot him.

¶5.    Bryant testified that he felt threatened by Walker and was fearful of him when he armed himself and when he shot Walker. He also testified that Walker was in his doorway when he initially shot him, and that Walker "went backwards" and fell down "on the opposite

3

side of the sidewalk." Bryant shot Walker eight times. He later turned himself in to the Hattiesburg Police Department. Walker was taken to the hospital where he underwent several surgeries and stayed in the ICU. A month after the shooting, Walker died from complications due to the gunshot wounds.

¶6. At trial, Bryant moved for a directed verdict at the close of the State's case-in-chief and at the close of all the evidence—both motions were denied. The case was submitted to the jury, and Bryant was convicted. Bryant filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied.

## STANDARD OF REVIEW

¶7. "Motions for a directed verdict and a judgment notwithstanding the verdict challenge the legal sufficiency of the evidence." *Mitchum v. State*, 164 So. 3d 477, 481 (¶12) (Miss. Ct. App. 2014). When considering whether the evidence is sufficient to sustain a conviction, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." *Id*. at 480 (¶12) (internal quotation marks omitted) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). "[W]here the evidence fails to meet this test[,] it is insufficient to support a conviction." *Id*. An appellate "court will not reverse unless reasonable and fair-minded jurors could only find the accused not guilty." *Id*. at 481 (¶12) (citing *Ferguson v. State*, 137 So. 3d 240, 243 (¶6) (Miss. 2014)).

## DISCUSSION

### I. Sufficiency of the Evidence

¶8.     Bryant argues that the evidence at trial was insufficient to support his conviction of second-degree murder. He contends that he was entitled to the castle-doctrine presumption, and so the evidence only established that his actions were justifiable homicide. Mississippi's justifiable-homicide statute, in relevant part, provides that the killing of another person is justified "[w]hen committed in the lawful defense of one's own person . . . where there [is] reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there [is] imminent danger of such design being accomplished." Miss. Code Ann. § 97-3-15(1)(f) (Rev. 2014). The castle doctrine, codified in section 97-3-15(3), states in part:

> A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling, or against a vehicle which he was occupying, or against his business or place of employment or the immediate premises of such business or place of employment, if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle, business, place of employment[,] or the immediate premises thereof[,] or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person's will from that dwelling, occupied vehicle, business, place of employment[,] or the immediate premises thereof[,] and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred.

¶9.     Bryant states that all of the witnesses agreed that Walker followed Bryant to his home, that Walker threatened Bryant, and that Walker was in Bryant's doorway when Bryant shot him. As such, Bryant argues that he was entitled to the castle-doctrine presumption, and with the presumption, his actions only amounted to justifiable homicide. Bryant and Jeremy testified that Walker was in Bryant's doorway when Bryant shot him. And that Walker went

5

backwards and eventually fell down outside on the opposite side of the sidewalk. But Pollard testified that she saw Bryant shoot Walker while Walker was lying wounded on the ground, with Bryant standing over him with a gun in his hands. Officer Tammy Hoadley, one of the first responders to the scene, testified that Walker was lying on the ground, specifically on the sidewalk. As such, there was a factual dispute as to where Bryant and Walker were when Bryant shot Walker.

¶10. In a homicide prosecution where the defendant asserts that the castle doctrine applies, and there are discrepancies in witness testimony, the issue is properly left to the jury. *Flynt v. State*, 183 So. 3d 1, 14 (¶40) (Miss. 2015). Here, the jury was instructed on the castle-doctrine presumption, justifiable homicide, imperfect self defense, and heat-of-passion manslaughter. After receiving instructions on the applicable law, the jury deliberated and found Bryant guilty of second-degree murder, rejecting Bryant's defense theories—including the castle doctrine. An appellate court "must presume that the jury considered the jury instructions—including the [c]astle [d]octrine instruction and the related evidence and testimony." *Id*. In the instant case, the evidence presented supports the jury verdict, and thus the trial court did not err in denying Bryant's motion for JNOV. This issue is without merit.

## II. *Weathersby* Rule

¶11. Bryant also argues that he was entitled to a directed verdict under the *Weathersby* rule, and that the trial court erred when it denied Bryant's motion. In *Weathersby*, our supreme court held:

> [W]here the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless

6

substantially contradicted in material particulars by a credible witness or witnesses for the [S]tate, or by physical facts or by the facts of common knowledge.

*Weathersby*, 147 So. at 482.

¶12.    Bryant argues that he and Jeremy were the only eyewitnesses to the shooting. And he also states that their testimony consistently maintained that Bryant shot Walker in necessary self-defense while Walker was entering Bryant's house in a threatening manner. As such, Bryant argues that under *Weathersby*, his version of events is an absolute defense to the homicide, and he is entitled to a directed verdict of acquittal.

¶13.    Bryant's recitation of the *Weathersby* rule is accurate. However, *Weathersby* only applies where the defendant's witness are the *only* eyewitnesses. Here, Bryant and Jeremy testified that Bryant shot Walker from inside his apartment while Walker was standing in Bryant's doorway. Yet Bryant admitted there was conflicting testimony about where Walker was standing when Bryant shot him. And there was another witness, Pollard, who testified she saw Bryant shoot Walker while Walker was lying on the ground outside of Bryant's apartment.

¶14.    Additionally, *Weathersby* does not apply where the defendant's version is "substantially contradicted in material particulars by a credible witness or witnesses for the [S]tate, or by physical facts . . . ." *Id.* In the instant case, Bryant testified that he did not recall shooting Walker in the back, or Walker walking or running away from Bryant or Bryant's apartment. However, the physical evidence showed that Walker had been shot—not only in the front of his body—but multiple times in the back and buttocks. The first signs

7

of blood were found ten to twelve feet outside of Bryant's apartment. And there were multiple shell casings found outside of Bryant's apartment on the grass next to the sidewalk. There was also conflicting testimony about who was taunting who, with Pollard testifying that Bryant was "egging [Walker] on[,] initiating for more conversation[,]" and saying, "[C]ome one. I've got something for you."

¶15. Here, the *Weathersby* rule does not apply. Bryant's witnesses were not the only eyewitnesses, and there were physical facts and other evidence presented by the State which substantially contradicted Bryant's version of the shooting. The supreme court "has warned repeatedly that where circumstances are shown in the evidence which materially contradict the defendant's version of self-defense, the jury is not required to accept his version of self-defense along with the conflicting evidence and any unfavorable inferences therefrom." *Pritchett v. State*, 560 So. 2d 1017, 1019 (Miss. 1990). Further, "[i]t is a rare case that meets all of the requirements of the [*Weathersby*] rule." *Sartain v. State*, 311 So. 2d 343, 345 (Miss. 1975) (citation omitted).

¶16. Bryant correctly notes that it is the duty of the trial court and not the jury to determine the applicability of the *Weathersby* rule. *Id.* at 344. Here, the trial court found that there were contradicting facts, and that there were more eyewitnesses than those testifying on Bryant's behalf. "[W]here the defendant's story is materially contradicted, the *Weathersby* rule has no application[,] and the matter of conviction versus acquittal becomes a question for the jury." *Green v. State*, 631 So. 2d 167, 174 (Miss. 1994). Accordingly, the trial judge did not err when he overruled Bryant's motion for a directed verdict under the *Weathersby*

rule and properly left the issue to the jury. Therefore, this issue is without merit.

### III. Photographs Introduced into Evidence

¶17. Bryant also contends that the trial court erred in admitting certain photographs into evidence. At trial, the prosecution introduced three color autopsy photographs that depicted the open torso, abdomen, and buttocks of Walker. Bryant claimed that the photographs lacked any probative value and were introduced only to arouse prejudice and inflame the jury. The State argued that the photographs were probative—specifically, with a tendency to prove that Walker had been shot multiple times in the back, torso, extremities, and buttocks, demonstrating to the jury the number and location of those wounds. According to the State, the location and number of wounds depicted in the photographs negated the claim that Bryant shot Walker in self-defense.

¶18. "The decision of whether or not to admit photographs is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *Hoskins v. State*, 172 So. 3d 1242, 1247 (¶5) (Miss. Ct. App. 2015) (quoting *Smith v. State*, 792 So. 2d 343, 348 (¶20) (Miss. Ct. App. 2001)). Our supreme court has noted that "[p]hotographs of the victim should not ordinarily be admitted into evidence where the killing is not contradicted or denied, and the corpus delicti and the identity of the deceased have been established." *Talbert v. State*, 125 So. 3d 66, 74 (¶28) (Miss. Ct. App. 2013) (quoting *Sudduth v. State*, 562 So. 2d 67, 70 (Miss. 1990)). However, "[p]hotographs of bodies may nevertheless be admitted into evidence in criminal cases where they have probative value[,] and where they are not so gruesome or used in such a way as to be overly prejudicial or

9

inflammatory." *Id.* "Some probative value is the only requirement needed in order to support a trial judge's decision to admit photographs into evidence." *Barfield v. State*, 22 So. 3d 1175, 1181 (¶15) (Miss. 2009) (quoting *Jones v. State*, 920 So. 2d 465, 476-77 (¶35) (Miss. 2006)). "Photographs of a victim have evidentiary value when they aid in describing the circumstances of the killing; describe the location of the body and cause of death; or supplement or clarify a witness's testimony." *Fortenberry v. State*, 195 So. 3d 890, 893 (¶11) (Miss. Ct. App. 2016) (quoting *Keller v. State*, 138 So. 3d 817, 857 (¶101) (Miss. 2014)).

¶19.    Here, the State presented the photographs at issue to describe the circumstances of the killing, specifically the location and number of wounds, and to contradict Bryant's version of events that he shot Walker out of fear while Walker was coming toward him. And the State's pathologist, Dr. Brent Davis, testified that the photographs helped to clarify the location of the injuries. Upon review, we do not find that the photographs were overly gruesome, or that their potential for prejudice outweighed their probative value. And "our case law indicates that the discretion of the trial [court] runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and extenuation of probative value." *Williams v. State*, 544 So. 2d 782, 785 (Miss. 1987). Therefore, we hold that the trial court judge did not abuse his discretion by admitting the photographs into evidence.

## IV.    Comments by the Prosecution

¶20.    For the first time on appeal, Bryant argues that he was unfairly prejudiced by the prosecutor's comments during the State's closing argument, and that justice requires this

10

Court to reverse his conviction and remand for a new trial.

¶21. "While attorneys are allowed wide latitude in presenting their cases to a jury, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Stevenson v. State*, 156 So. 3d 927, 929-30 (¶11) (Miss. Ct. App. 2015) (internal quotation marks omitted) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000)). "The standard of review for lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Id*. at 930 (¶11) (internal quotation marks omitted) (quoting *Slaughter v. State,* 815 So. 2d 1122, 1130 (¶45) (Miss. 2002)).

¶22. Before this Court determines whether the prosecutor's closing remarks were improper such that they constitute reversible error, we must first "determine if defense counsel objected to the statement . . . ." *Id.* at (¶13) (citation omitted). The supreme court has clearly stated, "Failure to raise an objection to a prosecutor's statements made at trial procedurally bars the statements from appellate review." *Sandlin v. State*, 156 So. 3d 813, 820 (¶27) (Miss. 2013). "If no contemporaneous objection is made, the error, if any, is waived." *Stevenson*, 156 So. 3d at 930 (¶13) (quoting *Slaughter*, 815 So. 2d at 1130-31 (¶47)).

¶23. When "no objections were raised at trial, the defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal." *Hurt v. State*, 34 So. 3d 1191, 1196 (¶12) (Miss. Ct. App. 2009) (quoting *Jackson v. State*, 924 So.

11

2d 531, 542 (¶36) (Miss. Ct. App. 2005)). "A review under the plain-error doctrine is necessary when a party's fundamental rights are affected, and the error results in a manifest miscarriage of justice." *Id*. at 1197 (¶17) (quoting *McGee v. State*, 953 So. 2d 211, 215 (¶8) (Miss. 2007)).

¶24. Bryant argues that the prosecutor's comments made during closing arguments prejudiced his defense by leading the jury to believe Bryant was a lazy person who had taken advantage of the government and cheated the system. The comments at issue included the prosecutor stating that Bryant had "skirted the system," "sat at home every day," and "[was] having barbeques all day." The State's comments further included that Bryant was "taking an apartment that . . . a single mother[] out there . . . needs," and "receiving almost free rent, not paying a light bill, probably other food stamps and stuff . . . ." Bryant also argues that the prosecutor made an impermissible "send a message" argument with the following statement:

> This is not self-defense. You're drunk. You're a drinking, irresponsible person who has to be held accountable for your actions because if you don't, then there is no responsibility, and there is no accountability, and people like him can continue on the same path and continue to take lives, continue to be irresponsible. We're going to stand for those rights. I promise you. Stand up for responsibility.

Our supreme court has "repeatedly condemned the 'send a message' argument and warned prosecutors accordingly." *Payton v. State*, 785 So. 2d 267, 270 (¶11) (Miss. 1999).

¶25. Here, the record shows that Bryant did not make a contemporaneous objection—or any objection at all—to the prosecutor's comments. However, "despite the absence of objection, [an appellate court] will not procedurally bar the issue where the send-a-message

12

argument is so inflammatory that the trial judge should have objected on his own motion." *Brown v. State*, 986 So. 2d 270, 276 (¶13) (Miss. 2008) (internal quotation marks and citation omitted). "[T]he 'so inflammatory' standard is the proper threshold inquiry for appellate review of claims of prosecutorial misconduct during closing argument." *O'Connor v. State*, 120 So. 3d 390, 401 (¶29) (Miss. 2013). "If a defendant can meet this threshold test, then the court should conduct the two-prong *Spicer* test. Under *Spicer*, we ask if 'the remarks were improper.' And if so, we ask if 'the remarks prejudicially affected the accused's rights.'" *Snyder v. State*, 174 So. 3d 331, 336 (¶22) (Miss. Ct. App. 2015) (quoting *Spicer v. State*, 921 So. 2d 292, 318 (¶55) (Miss. 2006)).

¶26. In the instant case, Bryant failed to object to the prosecutor's comments during trial and has thus waived the issue on appeal. And we do not find that the prosecutor's comments were "so inflammatory" as to overcome the threshold for plain-error review. Even where the "prosecutor's comments were improper, [but] they did not cause a miscarriage of justice[,] . . . a reversal based on plain error is not appropriate." *Stokes v. State*, 141 So. 3d 421, 424 (¶2) (Miss. Ct. App. 2013). Though Bryant urges us to reverse and remand his case for a new trial, "the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id*. at 428 (¶30) (quoting *Bush*, 895 So. 2d at 844 (¶18)). Here, we do not find that the evidence weighed heavily against the jury's guilty verdict of second-degree murder. Rather, there was sufficient evidence to support Bryant's conviction. Therefore, this issue is without merit.

¶27. **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF SECOND-DEGREE MURDER AND SENTENCE OF FORTY**

13

**YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**